# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### BRYSON CITY DIVISION
#### 2:09cv3
[consolidating: 2:09cv3; 2:09cv4;
2:09cv5; 2:09cv6: 2:09cv7; 2:09cv8;
2:09cv9; 2:09cv10; 2:09cv11; 2:09cv12;
2:09cv13; 2:09cv14; and 2:09cv15]

| | |
|---|---|
| SUNTRUST MORTGAGE, INC., | ) |
| a Virginia corporation, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| Vs. | ) MEMORANDUM AND |
| | ) RECOMMENDATION |
| DONALD D. BUSBY; LORI A. | ) |
| NASSIDA; KELLY M. BAKER; | ) |
| MICHAEL T. BAKER; ROBERT | ) |
| JOHN CUPELLI; LEIGH K. | ) |
| CUPELLI; DEANNA DAVIS; DEAN | ) |
| R. CUMMINGS; JEFFREY A. | ) |
| SYKES; GUY BARHOMA; ROBERT | ) |
| G. RONK; GREGORY M. SCHUETZ; | ) |
| KENNARD M. DAVIS; and PAUL J. | ) |
| MULA, | ) |
| | ) |
| **Defendants.** | ) |
| _____ | ) |

**THIS MATTER** is before the court in accordance with 28, United States

Code, Section 636(b) for entry of a recommendation as to the following dispositive

motions:

(1)    2:09cv3: plaintiff's Motion to Dismiss (#19);

(2)    2:09cv4: plaintiff's Motion to Dismiss (#20);

(3)    2:09cv5: plaintiff's Motion to Dismiss (#10);

(4)    2:09cv6: plaintiff's Motion to Dismiss (#21);

(5)    2:09cv7: plaintiff's Motion to Dismiss (#20);

(6)    2:09cv9: plaintiff's Motion to Dismiss (#21);

(8)    2:09cv10: plaintiff's Motion to Dismiss (#20);

(9)    2:09cv11: plaintiff's Motion to Dismiss (#17);

(10)    2:09cv12: plaintiff's Motion to Dismiss (#18);

(11)    2:09cv13: plaintiff's Motion to Dismiss (#20);

(12)    2:09cv14: plaintiff's Motion to Dismiss (#19); and

(13)    2:09cv15: plaintiff's Motion to Dismiss (#20).

At the commencement of the hearing, counsel for the remaining defendants consented to consolidation and counsel for plaintiff also consented, but reserved the right to move for severance for purposes of trial. Thus, this action is now completely consolidated.

Having carefully considered such motions, heard oral arguments, and reviewed the pleadings, the court enters the following findings, conclusions, and Recommendation.

**FINDINGS AND CONCLUSIONS**

## I.     Nature of the Action

In this action, plaintiff seeks to recoup post-foreclosure deficiencies against its borrowers, whom plaintiff contends made material misrepresentations as to their income in "non income verification" loans as well as other misrepresentations. All defendants have answered the Complaint and asserted counterclaims, and plaintiff has moved under Rule 12(b)(6) to dismiss all counterclaims.

## II.     Factual Setting

### A.     Plaintiff's Complaints

In order to give context to defendants' respective counterclaims, it is necessary to first review the allegations of plaintiff as asserted in its respective Complaints. This action arises from a series of construction loans made to 13 owners of lots in a subdivision in Jackson County, North Carolina. See Complaints, Docket Entry # 1, in 2:09cv3, 2:09cv4, 2:09cv5, 2:09cv6, 2:09cv7, 2:09cv9, 2:09cv10, 2:09cv11, 2:09cv12, 2:09cv13, 2:09cv14, and 2:09cv15. Each loan was for approximately 1.5 million dollars, id., at ¶¶ 5, as evidenced by an adjustable rate note, and was secured by a deed of trust, all of which are annexed to each Complaint. Id. In consideration of the note and deed of trust, each defendant delivered to plaintiff a loan agreement, which is also attached to the Complaint. Id., at ¶¶ 7. Under terms of the loan

agreement, the proceeds of each note were to be used to construct a home on the property. Id., at ¶¶ 8. In each case, it appears from the pleadings that funds were disbursed at closing to pay off an existing loan (which the court gathers was in favor of the developer), but that few funds, if any, were thereinafter disbursed inasmuch as it has been alleged that none of the homes were ever completed. Id., at ¶¶ 10.

Plaintiff further alleges that its agreement to make the loan was made in reliance on the statements of defendants in the loan application, which were certified by each defendant as being true and accurate. Id., at ¶¶ 9. Plaintiff alleges that in each loan agreement, each defendant misrepresented their true monthly income and that their true monthly income was materially and substantially less than stated in their respective loan agreement. Id., at ¶¶ 10 & 11. Plaintiff further alleges that not only did each defendant falsely certify their income in the loan application, they falsely certified in FannieMae Form 1097, "Borrower's Certification & Authorization," that the information they gave in their loan application and other documents were true and accurate and that no material misrepresentations had been made. Id., at ¶¶ 12.

Plaintiff alleges that in addition to the loan agreement and Form 1097, defendants also executed a "Borrowers Agreement of Future Cooperation," in which they each agreed to cooperate and promptly correct any errors in the loan documents.

Id., at ¶¶ 13. After discovering the discrepancy concerning monthly income, plaintiff questioned defendants and requested documents corroborating the monthly income stated in their respective loan agreements. Id., at ¶¶ 14. None of the defendants produced any documentation when requested to do so by plaintiff. Id. Further, plaintiff alleges that none of the defendants completed construction within the time allowed by the loan agreement. Id., at ¶¶ 15.

Plaintiff contends, *inter alia*, that defendants' failure to provide documentation of their income upon request amounts to an event of default under the loan agreement, id., at ¶¶ 16, and that any default under the loan agreement shall also amount to a default under the note and/or security instrument. Id., at ¶¶ 17. In the event of default, the loan agreement provided that plaintiff could demand payment of any unpaid principal and interest, as well as costs and fees. Id., at ¶ 18. According to the allegations made in each Complaint, such demand went unheeded, and foreclosure proceedings were initiated in the North Carolina General Court of Justice in Jackson Court. According to representations made by plaintiff and defendants in the briefs and in open court, such foreclosure proceedings have been completed and the time for appeal therefrom has lapsed. While not alleged in the Complaints, the court surmises that a post-foreclosure deficiency exceeding $75,000.00 exists as to each

defendant.[1]

For causes of action, plaintiff asserted the following:

(1)    Count I: Breach of Contract; and

(2)    Count II: Fraud.

## B.    Defendants' Counterclaims

While it appears that all defendants are bound by a common nucleus of

operative facts, it appears that there are two distinct subsets of Counterclaims.  The

first subset of Counterclaims are asserted by a group of defendants the court has

identified as the Wimer defendants,[2] and generally seek redress under a theory that

---

[1]    The Complaints were filed before the foreclosure proceedings were completed in
state court, making it impossible for plaintiff to state with any certainty the amount of any
deficiency.  Inasmuch as all foreclosures have been completed, it may now be appropriate for
plaintiff to state the amount of deficiency as to each defendant either through amendment of the
complaint or the filing of a supplemental complaint.  See Fed.R.Civ.P. 15. Amendment or other
pleading is imperative inasmuch as the amounts sought in the respective *ad damnum* clauses
appears to stated in the full amount of the original principal balance upon default.

> When a plaintiff in a suit pending in a federal district court desires to allege acts
> or events which have occurred after the filing of the original complaint, the
> appropriate pleading is a supplemental complaint pursuant to Rule 15(d).

35A C.J.S. *Fed. Civ. Proc*. § 431 (2008);  see also,6 Charles Alan Wright & Arthur R. Miller,
Federal Practice and Procedure § 1473 (2d  ed. 2008);  Teeval Co v. City of New York, 88
F.Supp. 652, 653 (D.C.N.Y. 1950) ("Since plaintiff desires to allege events which have happened
since the date of its original complaint, the appropriate pleading is not an amended complaint but
a supplemental complaint.").

[2]    The court has used such identifying title inasmuch as Mr. Wimer is counsel for
the defendants in the following actions: 2:09cv3, 2:09cv4, 2:09cv6, 2:09cv7;2:09cv8;
2:09cv9, 2:09cv10, 2:09cv11, 2:09cv12, 2:09cv13, 2:09cv14, and 2:09cv15.

they had no obligation to verify their respective incomes and that plaintiff's foreclosure and the seeking of a deficiency in this action is improper. The second subset of Counterclaims are asserted by a husband and wife, who the court has identified as the Reinhardt defendants,[3] whose counterclaims first assert that they never signed the loan documents and that their signatures were forged, but who then plead that they were victims of Unfair and Deceptive Trade Practices. The court will discuss the Counterclaims made by each subset of defendants *seriatim*.

At hearing, counsel for the Wimer defendants argued that he could find no cases that would allow the court to consider documents that were not annexed to the Counterclaims by defendants without converting the motion to one for summary judgment. Further, counsel argued that it would be improper for the court to consider documents annexed to plaintiff's Complaint when considering a Rule 12(b)(6) motion for dismissal of counterclaims rather than the claims of plaintiff. Honorable Lacy H. Thornburg, United States District Judge, held in 2004 as follows:

> The first issue is whether, in ruling on this motion pursuant to Rule 12(b)(6), this Court may consider matters outside the complaint filed in this action but which were made of record in the prior action filed by the Plaintiff in this Court, <u>Clark v. BASF Corp.</u>, 229 F.Supp.2d 480 (W.D.N.C.2002). "Despite the express language of Fed.R.Civ.P. 12(b), ... '[t]he district court may also take judicial notice of matters of

---

[3]     The court has used such identifying title inasmuch as Mr. Reinhardt is counsel for the defendants in 2:09cv5.

public record' without converting a 12(b)(6) motion into a motion for summary judgment." Henson v. CSC Credit Servs., 29 F.3d 280, 284 (7th Cir.1994) (quoting United States v. Wood, 925 F.2d 1580, 1582 (7th Cir.1991)); accord, Boateng v. InterAmerican Univ., Inc., 210 F.3d 56, 60 (1st Cir.2000); Sebastian v. United States, 185 F.3d 1368, 1374 (Fed.Cir.1999); Helfrich v. Metal Container Corp., 102 Fed.Appx. 451, 2004 WL 1325690 *2 (6th Cir.2004); Norfolk Federation of Business Dist. v. H.U.D., 932 F.Supp. 730, 736 (E.D.Va.), aff'd., 103 F.3d 119 (table), 1996 WL 671293 *1 (4th Cir.1996) ("In short, a court may consider matters of public record, items appearing in the record of the case, as well as exhibits attached to the complaint."). "[A] court may take judicial notice of matters of public record without converting a Rule 12(b)(6) motion into a motion for summary judgment. Here, all of [Defendant's exhibits] are publicly-recorded papers from prior court proceedings. They meet the public records exception and [the Court] may consider them in deciding this motion to dismiss." Happel v. Wal-Mart Stores, Inc., 286 F.Supp.2d 943, 945 (N.D.Ill.2003); accord, Kaempe v. Myers, 367 F.3d 958, 963 (D.C.Cir.2004). The undersigned will, therefore, consider the exhibits attached to the Defendant's motion to the extent that they were part of the public record from the Plaintiff's previous action in this Court.

Clark v. BASF Salaried Employees' Pension Plan, 329 F.Supp.2d 694, 697 (W.D.N.C. 2004)(footnote omitted).

In this case, the court has considered the prior decisions in the related cases disposed of by the state court, as well as the underlying loan documents, notes, and deeds of trust. These materials all fall within the public records exception. Even if they do not fall within the public records exception, they are the type of documents that the counterclaim defendants should have attached to their counterclaims inasmuch as such documents are central to their contentions.

> We have said that a document is not "outside" the complaint if the complaint specifically refers to the document and if its authenticity is not questioned. Townsend v. Columbia Operations, 667 F.2d 844, 848-49 (9th Cir.1982). The leading commentators state that "when [the] plaintiff fails to introduce a pertinent document as part of his pleading, [the] defendant may introduce the exhibit as part of his motion attacking the pleading." 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1327, at 762-63 (2d ed. 1990); *accord* Romani v. Shearson Lehman Hutton, 929 F.2d 875, 879 n. 3 (1st Cir.1991). We have previously indicated approval of this rule, but have not explicitly adopted it. See, e.g., In re VeriFone Sec. Litig., 11 F.3d 865, 868 n. 2 (9th Cir.1993). As it makes sense and comports with existing practice, we hold that documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss. Such consideration does "not convert the motion to dismiss into a motion for summary judgment." Romani, 929 F.2d at 879 n. 3.

Branch v. Tunnell, 14 F.3d 449, 453 -454 (9th Cir. 1994), *overruled on other grounds*,

Galbraith v. County of Santa Clara, 307 F.3d 1119 (9th Cir. 2002)(overruling Branch

on the issue of a heightened pleading standard in civil rights actions); *accord*

Adamson v. Poorter, 2007 WL 2900576 (11th Cir. 2007).[4]  The Court of Appeals for

the Eleventh Circuit earlier explained this concept, as follows;

> the rationale is that when a plaintiff files a complaint based on a document but fails to attach that document to the complaint, the defendant may so attach the document, and therefore, the document, as one that could have or rather in fairness should have been attached to the

---

[4]     Due to the limits of Electronic Case Filing, a copy of such unpublished decision is placed in the electronic docket through incorporation of the Westlaw citation.

complaint, is considered part of the pleadings and thus may be reviewed at the pleading stage without converting the motion into one for summary judgment. In short, the theory is that such a document is not "outside the pleadings," and thus it may be considered at the 12(b)(6) stage without a transformation into the summary judgment posture, as Rule 12(b) only requires conversion when documents "outside the pleadings" are considered. Therefore, if a document is deemed so central to the claim so as not to be "outside the pleadings," then it may be considered on a motion to dismiss without giving the other the 10-day notice that is necessary when matters outside the pleadings are considered.

Bryant v. Avado Brands, Inc., 187 F.3d 1271, fn. 16 (11th Cir. 1999). In this case, the documents plaintiff has annexed to its Complaint and to its motions to dismiss will all be considered under either the public records exception and/or as documents that should have been attached to the counterclaims in all fairness as they are all central to the counterclaims herein asserted.

## 1.    Wimer Defendants

The Wimer defendants are named in consolidated civil actions 2:09cv3, 2:09cv4, 2:09cv6, 2:09cv7, 2:09cv9, 2:09cv10, 2:09cv11, 2:09cv12, 2:09cv13, 2:09cv14, and 2:09cv15. Put another way, the Wimer defendants consist of all defendants except the Bakers, who are referred to herein as the Reinhardt defendants.

In their First Amended Counterclaims (hereinafter "FAC"),[5] the Wimer

---

[5]    The docket entry number differs in most of the cases inasmuch as the numbered pleadings vary after the Complaint in each case.

defendants allege that in 2006 they were approached to purchase investment property in Jackson County. FAC, at ¶¶ 2. They took out loans to purchase the property, consisting of two lots required to build one residence, "with lenders other than Plaintiff." Id., at ¶¶ 3. In each case, such land purchase cost in excess of $500,000.00. Id. Defendants agreed with the developer that if a house was ever built on such lots, the developer would receive a percentage of any profits. Id., at ¶¶ 4. Defendants contend that after they became the owners of the lots, plaintiff offered to refinance the loans, id., at ¶¶ 5, and that the lots were re-appraised by an appraiser they did not request but who was hired by plaintiff and who assumed a high evaluation based on the yet-to-be built home. Id., at ¶¶ 6 & 7. The Wimer defendants further contend that each loan was handled by an employee or agent of plaintiff, Victor Vidal, id., at ¶¶ 8, and that Mr. Vidal instructed them not to speak to any other employee of defendant. Id., at ¶¶ 10. Further, they allege that the closing was accomplished by their attorney through the mail. Id., at ¶¶ 11.

The Wimer defendants allege that they always intended the property to be an investment property and never intended that the property be used as either a primary residence or a second home. Id., at ¶¶ 12. Of particular pertinence to the Rule 12(b)(6) inquiry below, such defendants allege that

13.    Defendant did not provide any financial information to SunTrust

because SunTrust represented to Defendant that the new loan would be a Non-Income Verification ("NIV") loan, meaning that no statement of income would be required for this loan.

14.     It was Defendant's understanding that the loan carried with it higher points or fees to be paid to SunTrust as a result of this being an NIV loan.

Id., at ¶¶ 13-14.

The Wimer defendants then contend that employees or agents of plaintiff knowingly and improperly completed the loan application to reflect that the proposed home was either a primary residence or second home, because they knew that if the application reflected the true intent of the borrowers, to wit, use of the home as investment property, the loan would not go through. Id., at ¶¶ 16. Thus, the Wimer defendants contend that it was plaintiff by and through its agents who deceived them. Id.

They also contend, and admit, that "the stated income figures for Defendant were not accurate." Id., at ¶¶ 17. They contend that the false income figures were not provided by them, but were "provided by Sun Trust employees in an amount they

knew would be high enough to get the loan approved . . . ." Id. The Wimer defendants also contend that while the documents indicate a construction loan was being made, they had never met with or entered into an agreement with any builder to build a home on their respective lots. Id., at ¶¶ 18-20. They also contend that they never met or talked with the closing attorney, never knew whether such attorney was a North Carolina lawyer, and that such attorney never contacted them; however, they allege that they signed the documents and the loan closed. Id., at ¶¶ 23-25. They later contend that such attorney and a lawyer from New York was retained by the developer from whom they purchased lots and that such attorney was paid by the developer, and that such attorneys represent the developer in other matters. Id., at ¶¶ 36. They contend that after closing, the original loan for their lots was paid off and an additional amount was paid to the contractor. Id., at ¶ 29.

The Wimer defendants contend that after the loan was closed and funds disbursed, plaintiff only then began asking for financial information from defendants. Id., at ¶¶ 30. They allege that it was then that plaintiff became aware of "shoddy or illegal loan practices at the Florida office where Mr. Vidal worked and, rather than requesting Defendant's financial information for quality control purposes, SunTrust was investigating the loan practices of that office." Id., at ¶¶ 31. They then assert as follows:

Defendant was perplexed at SunTrust's request for financial information because SunTrust employees had informed Defendant that the loan was an NIV loan and, upon information and belief, all mortgage payments were current when SunTrust made its request for Defendant's financial information. In fact, interest payments of approximately $30,000 were made to SunTrust even though SunTrust halted construction disbursements.

Id., at ¶¶ 32. Further, they assert that

SunTrust commenced foreclosure proceedings against Defendant and Defendant's lot(s), claiming that although the loan payments were current and not in default, Defendant had defaulted on the loan by not adequately verifying financial information on what was supposed to be an NIV loan. This was a non-monetary default.

Id., at ¶¶ 33.

The Wimer defendants then allege that their respective properties were purchased at the foreclosure sale by plaintiff below tax value and below fair market value. Id., at ¶¶ 37. In sum, the Wimer defendants allege that if plaintiff was deceived, it was deceived by the acts of its own employees and agents. Id., at ¶¶ 42.

For Counterclaims, the Wimer defendants allege the following causes of action:

(1)    Count One: Fraud and Fraudulent Concealment (in representing to them that the loan was for an investment property and that no income verification would be necessary, and by providing fabricated income figures and by falsely checking the box that such loan was for either a primary residence or second home);

-14-

(2)    Count Two: Negligent Misrepresentation (by failing to disclose that plaintiff would be making false representations in the loan application)

(3)    Count Three: Unfair and Deceptive Trade Practices (by misleading them concerning the terms of the loan, by representing that the loan they were receiving was suitable for investment property, by stating that the loan required no income verification, and by supplying false information);

(4)    Count Four: Breach of Duty of Good Faith and Fair Dealing (by altering the terms of the loan, changing it from investment property to construction of a primary or second home, and by including terms requiring post-closing income verification); and

(5)    Count Five: Negligent Appraisal (by commissioning and relying on an appraisal where accepted appraisal standards were not followed in making the loan).

**2.    Reinhardt Defendants**

In their Counterclaims, the Reinhardt defendants first reassert and incorporate their affirmative defenses of forgery, estoppel, reasonable value of property offset, RESPA and TILA violations. For causes of action, they allege the following:

(1)    First Counterclaim: Fraud and Fraudulent Inducement (forgery of the loan and closing documents, misrepresentations concerning the nature

of the loan, unilaterally overstating defendants' income, and misrepresenting that they would not be required to verify their stated income); and

(2)    Second Counterclaim: Unfair and Deceptive Trade Practices (that the same conduct alleged in the First Counterclaim amounted to an unfair and deceptive trade practice and constituted a pattern of practice as to other investors in the same subdivision).

## III.    Plaintiff's Motion to Dismiss All Counterclaims

Plaintiff has moved to dismiss all counterclaims asserting that defendants have failed to state cognizable causes of action. Where a counterclaim defendant contends that a counterclaim plaintiff has failed to state a cognizable claim, Rule 12(b)(6) authorizes dismissal based on a dispositive issue of law. Neitzke v. Williams, 490 U.S. 319, 109 S.Ct. 1827, 1832 (1989); Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Conley v. Gibson, 355 U.S. 41 (1957). As the Court discussed in Neitzke:

> This procedure [for dismissal], operating on the assumption that the factual allegations in the complaint are true, streamlines litigation by dispensing with needless discovery and fact finding. Nothing in Rule 12(b)(6) confines its sweep to claims of law which are obviously insupportable. On the contrary, if as a matter of law "it is clear that no relief could be granted under any set of facts . . . a claim must be dismissed, without regard to whether it is based on outlandish legal theory . . . . What Rule 12(b)(6) does not countenance are dismissals based on a judge's disbelief of a complaint's factual allegations."

Id., at 1832 (citation omitted). Dismissal of a complaint is proper under Rule 12(b)(6) where it is clear that no set of facts consistent with the allegations in the plaintiffs' complaint could support the asserted claim for relief. Taubman Realty Group LLP v. Mineta, 320 F. 3d 475, 479 (4th Cir. 2003); Migdal v. Rowe Price-Fleming Intl Inc., 248 F. 3d 321, 325-36 (4th Cir. 2001). However, the Court recently held that the "no set of facts" standard first espoused in Conley, supra, only describes the "breadth of opportunity to prove what an adequate complaint claims, not the minimum adequate pleading to govern a complaint's survival." Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). Under Twombley, to survive Rule 12(b)(6) scrutiny, the claims must at a minimum be "plausible." Id. Such decision has been further clarified:

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1950 (2009). While the court accepts plausible factual allegations in the complaint as true and considers those facts in the light most favorable to the party resisting dismissal, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Eastern Shore Mkt.'s Inc. v. J.D. Assoc.'s, LLP, 213 F. 3d 175, 180 (4th Cir. 2000).

The presence of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint cannot support the legal conclusion. And although the pleading requirements of Rule 8(a) are very liberal, more detail often is required than the bald statement by plaintiff that he has a valid claim of some type against defendant. This requirement serves to prevent costly discovery on claims with no underlying factual or legal basis.

Migdal, at 326 (citations and internal quotations omitted). In addition, a court cannot "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." Venev v. Wyche, 293 F. 3d 726, 730 (4th Cir. 2002) (citations and internal quotations omitted). For the limited purpose of ruling on counterclaim defendant's motions, the court has accepted as true the facts alleged by counterclaim plaintiffs in their respective Counterclaims and will view them in a light most favorable to counterclaim plaintiffs.

## IV. Discussion

### A. Motion to Dismiss Wimer Defendants' Counterclaims

#### 1. Count One: Fraud and Fraudulent Concealment

In Count One, the Wimer defendants contend that plaintiff engaged in fraud and fraudulent concealment in representing to them that the loan was for an investment property, that no income verification would be necessary, by providing fabricated income figures, and by falsely checking the box that such loan was for either a primary residence or second home.

The essential elements of a claim of fraud by misrepresentation are: (1) a false representation of a material fact, (2) that was reasonably calculated to deceive, (3) which was made with the intent to deceive, (4) that did in fact deceive, and (5) resulted in damage. <u>Jolly v. Acad. Collection Serv.</u>, 400 F.Supp.2d 851 (M.D.N.C. 2005). To satisfy the specificity requirements of Rule 9(b), it is pleader's obligation to plead the time, place, and contents of the false representations, as well as the identity of the person making the representation and what such person obtained thereby. In order to plead fraud by omission, a plaintiff must allege the following:

> (1) the relationship or situation giving rise to the duty to speak, (2) the event or events triggering the duty to speak, and/or the general time period over which the relationship arose and the fraudulent conduct occurred, (3) the general content of the information that was withheld and the reason for its materiality, (4) the identity of those under a duty who failed to make such disclosures, (5) what those defendant(s) gained by withholding information, (6) why plaintiff's reliance on the omission was both reasonable and detrimental, and (7) the damages proximately flowing from such reliance.

<u>Breeden v. Richmond Community College</u>, 171 F.R.D. 189, 195 (M.D.N.C. 1997) (citations omitted). In pleading fraud or negligent misrepresentation,

> when the party relying on the false or misleading representation could have discovered the truth upon inquiry, the complaint must allege that he was denied the opportunity to investigate or that he could not have learned the true facts by exercise of reasonable diligence.

<u>Hudson-Cole Develop. Corp. v. Beemer</u> 132 N.C.App. 341, 346 (1999). Thus, a

claim for either fraud or fraudulent concealment is not cognizable where the pleader fails to make an independent investigation, <u>Calloway v. Wyatt</u>, 246 N.C. 129 (1957), or where the pleader knows the true facts. <u>Cox v. Johnson</u>, 227 N.C. 69, 70 (1946).

The Wimer defendants' contention that fraud was committed by representations that "no income verification would be necessary" is readily defeated through "independent investigation" of the loan papers each defendant signed, including form FannieMae Form 1097, which counsel for the Wimer defendants tendered during oral arguments. That form specifically provides:

> As part of the application process, SunTrust Mortgage, Inc., and the mortgage guaranty insurer (if any), may verify information contained in my/our loan application and in other documents required in connection with the loan, either before the loan is closed or as part of its quality control program.

Fannie Mae Form 1097, at 2nd ¶ 1. Assuming the tendered form is representative of paperwork in each defendants' loan package, it appears that each defendant signed such form making such representation. As to the claims based on fabrication of monthly income and whether the loan was for an investment as opposed to a residence, it is beyond the realm of reason to suggest that these defendants would not know what their own monthly incomes were or that they did not know what use they intended to put to a property costing in the mid six figures to acquire. Thus, the Wimer defendants fail to state claims for fraud or fraudulent inducement as a matter

of law. The undersigned will recommend that the First Counterclaim be dismissed.

## 2.    Count Two: Negligent Misrepresentation

In their second counterclaim, the Wimer defendants allege negligent misrepresentation through plaintiff's failure to disclose that it would be making false representations in the loan application. In alleging a claim for negligent misrepresentation, the essential elements are that the pleaders (1) justifiably relied to their detriment on (2) information prepared without reasonable care (3) by a person who owed the relying party a duty of care.  Hudson-Cole Dev. Corp. v. Beemer, 132 N.C.App. 341, 346 (1999).

The Wimer defendants' counterclaim for negligent misrepresentation is simply a repackaging of their claim for fraud, and this claim must fail for the same reasons discussed above.  As justifiable reliance is the lynchpin to stating a cause of action for negligent misrepresentation, the WImer defendants simply cannot, as a matter of law, be justified in relying on information prepared by another the Wimer defendants well knew to be false. In this case, the Wimer defendants have admitted as much in their Counterclaims, to wit, that they knew the information was false, but signed the loan papers anyway. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft, supra, at 1950.  Based on the allegations made in

support of these Counterclaims, it is not plausible that these defendants could be found entitled to relief for negligent misrepresentation. The undersigned will recommend that the Second Counterclaim be dismissed.

### 3. Count Three: UDTPA

In their third counterclaim, the Wimer defendants contend that plaintiff has committed Unfair and Deceptive Trade Practices in violation of North Carolina law. A state-law claim for Unfair and Deceptive Trade Practices is governed by Chapter 75-1.1(a) of the North Carolina General Statutes, which provides that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." Id. When such provision was enacted into law in 1969, it contained the following statement of purpose:

> The purpose of this section is to declare, and to provide civil legal means to maintain, ethical standards of dealings between persons engaged in business and between persons engaged in business and the consuming public within this State to the end that good faith and fair dealings between buyers and sellers at all levels of commerce be had in this State.

N.C. Gen. Stat. 75-1.1(b). See also Edmisten v. Penney Co., 292 N.C. 311 (1977).

In response to the decision of the North Carolina Supreme Court in Edmisten, supra, Section 75-1.1(b) was amended in 1977 to read "[f]or the purposes of this section "commerce" includes all business activities, however denominated . . . ." Id. Thus,

the UDTPA is far reaching. See Roberson v. Dale, 464 F.Supp. 680 (M.D.N.C. 1979).

See also Liggett Group, Inc. v. Sunas, 113 N.C. App. 19, 31 (1993); Buie v. Daniel

Int'l, 56 N.C. App. 445, 448, *cert. denied*, 305 N.C. 759 (1982).

To state a cause of action under the UDTPA, the pleader must allege the

following:

(1)     conduct constituting an "unfair or deceptive act or practice;"

(2)     conduct "in or affecting commerce," and

(3)     that such conduct proximately caused actual injury to plaintiff.

Food Lion, Inc. v. Capital Cities/ABC Inc., 951 F. Supp. 1224, 1230 (M.D.N.C.

1996).

In this case, these defendants allege a UDTPA violation based on plaintiff

misleading them as to the terms of the loan, by representing that the loans they were

receiving were suitable for investment property, by stating that the loan required no

income verification, and by supplying false information in the loan documents.  Thus,

the same alleged fraud and misrepresentation upon which such defendants' first two

counterclaims are based also forms the foundation for the UDTPA claim.

Such defendants have failed, however, to sufficiently allege plausible

detrimental reliance, inasmuch as they admittedly knew the loans they sought were

for investment property instead of residential use, they knew or could have easily

discovered by reading the loan document agreements that the while the loans were NIV, they still required truthful answers as to all matters, including their respective incomes, and that their respective monthly incomes were not as stated. Although "the occurrence of the alleged conduct, damages, and proximate cause are fact questions for the jury . . . . whether such conduct [falls within the UDTPA] is a legal issue for the court." ABT Building Products v. National union Fire Ins. Co. of Pittsburgh, 472 F.3d 99, 123 (4th Cir. 2006)(citation and corresponding quotation marks omitted). These defendants simply cannot allege plausible deception based on purported representations they knew at the time were not true, as they were not deceived. The undersigned reincorporates the discussion relevant to the first two counterclaims, and will recommend that these defendants' UDTPA counterclaim also be dismissed under Rule 12(b)(6).

### 4.    Count Four: Breach of Duty of Good Faith and Fair Dealing

These defendants next allege that plaintiff has breached its duty of good faith and fair dealing. Defendants contend that such duty was breached by plaintiff altering the terms of the loan, changing the loan from an investment property loan to a construction loan for a primary or second home, and by including terms requiring post-closing income verification.

First, these defendants fail to state a recognized cause of action in North

Carolina inasmuch as the implied duty of good faith and fair dealing only arises where a party to a contract performs its contractual obligations in bad faith, and such breach of the implied duty serves as a cognizable basis for a breach of contract. <u>See</u> <u>Weyerhaeuser Co. V. Godwin Bldg. Supply Co., Inc.</u>, 40 N.C.App. 743, 746 (1979); <u>Allen v. Allen</u>, 61 N.C.App. 716, 718 (1983). Here, all of the allegations concern actions plaintiff supposedly took before the contract was entered, thus, no cause of action can be stated; put another way, resolving all factual allegations in favor of defendants, their cause of action does not meet the threshold of plausibility inasmuch as the alleged wrongful conduct anteceded contract formation. <u>Weyerhaeuser Co.</u>, <u>supra</u>, at 746.

Even if actions that precede contract formation could form the basis of a cause of action for breach of the implied duty of good faith and fair dealing, it would be impossible for these defendants to plead a prima facie cause of action inasmuch as their own admissions defeat such a claim. As discussed above, defendants freely admit that they read the loan documents, were aware of the contents, knew of the falsehoods contained therein, but signed the documents and submitted them anyway. Further, these defendants admit that plaintiff's agent represented to them precisely what the loan was, "In the nature of a construction to permanent loan . . . ." <u>See</u> Counterclaims Four, at ¶¶ 9. Again, separating legal conclusions from allegations of

fact, defendants have not set forth a plausible cause of for breach of implied duties even if such cause of action applied to pre-contractual events. The court must, therefore, recommend that the Fourth Counterclaim be dismissed under Rule 12(b)(6).

### 5.    Count Five: Negligent Appraisal

In their fifth counterclaim, the Wimer defendants have asserted a cause of action for negligent appraisal. Missing from this action, however, as a counterclaim defendant is any *appraiser*.

North Carolina law provides that an *appraiser* may be held liable to a prospective purchaser, regardless of who hired the appraiser, so long as the appraiser had reason to believe that the appraisal would be distributed to the purchaser and that such person would rely on the appraisal. <u>Balance v. Rinehart</u>, 105 N.C.App. 203 (1992). The court can find no North Carolina case law that recognizes a cause of action for negligent appraisal against the person or entity that allegedly hired the appraiser.

This lack of case law requires this court to consider whether a North Carolina tribunal would extend the common law and find such a cause of action applicable to persons who procure a appraisal. Absent case law, the court believes a North Carolina court would first turn to logic in considering the breadth of its common law. <u>See</u> <u>Crump v. Mims</u>, 64 N.C. 767 (1870) ("We take occasion here to suggest to pleaders

that the rules of the common law as to pleading, which are only the rules of logic, have not been abolished by the Code"). There simply is no logic to extending liability for the alleged negligent acts of appraisers to the person who procured the appraisal. The need for the appraisal profession--as well as many other professions requiring expertise and judgment--would necessarily vanish overnight if responsibility for professional advice that was negligently rendered was visited upon the person who procured such advice. People simply would not hire appraisers, or other professional advisers, if the person doing the hiring was held responsible for any professional negligence. Turning defendants' argument about, it would be patently unfair to hold borrowers liable to the bank for negligent advice rendered by appraisers the borrower hired. Logic counsels against extending the narrow tort of negligent appraisal to those who procure such service.

Where it can be alleged that the person who hired the appraiser conspired with the appraiser to inflate the value of property for an *wrongful* purpose, a cause of action may (or may not) exist. Where a civil conspiracy is asserted,[6] the pleader must allege the following essential elements:

> (1)    an agreement between two or more persons to commit a wrongful act;

---

[6]     "There is no independent cause of action [in North Carolina] for civil conspiracy." <u>Sellers v. Morton</u>, ___ N.C.App. ___, 661 S.E.2d 915, 922 (2008), *quoting* <u>Toomer v. Garrett</u>, 155 N.C.App. 462, 483 (2002), *review denied* 357 N.C. 66, 579 S.E.2d 576 (2003).

(2)     an act in furtherance of the agreement; and

(3)     damage to the plaintiff as a result of the wrongful act.

See Henderson v. LeBauer, 101 N.C. App. 255, 260 (1991). As this district has recently recognized, a "naked claim" of civil conspiracy cannot be brought independent of properly-alleged claims for the underlying wrongdoing, making such claim  subject to dismissal if the underlying claims for wrongful conduct are dismissed. Precision Components, Inc. v. C.W. Bearing USA, Inc., 3:06-CV-259 (W.D.N.C. Dec. 16, 2008) (Reidinger, J.).

In this case, asserting a claim against the appraiser for *negligent* appraisal cannot satisfy the requirement of a "wrongful act." The conspiracy claim would fail as a matter of law as it is impossible to conspire to commit a *negligent* act. Senart v. Mobay Chem. Corp., 597 F.Supp. 502, 505 (D.Minn.1984). Conspiracy requires an intent to do a *wrongful* act, such as an intentional tort. Negligent appraisal is, from a review of its elements, not an intentional tort.

This is not to say that the common law North Carolina law would not provide redress where the procurer of an appraisal conspires with an appraiser to *wrongfully* -- not negligently -- inflate or deflate the value of property. A pleader would necessarily have to have a good faith basis under Rule 11 to assert the claim and be able to plead specific facts under Rule 9 to allege a civil conspiracy to commit fraud. As pointed

out by the district court in <u>Precision Components, Inc.</u>, *supra*, North Carolina courts do not recognize, *per se*, a cause of action for "civil conspiracy."  Instead, the North Carolina Supreme Court has explained that

> Accurately speaking, there is no such thing as a civil action for conspiracy. The action is for damages caused by acts committed pursuant to a formed conspiracy, rather than by the conspiracy itself; and unless something is actually done by one or more of the conspirators which results in damage, no civil action lies against anyone. The gist of the civil action for conspiracy is the act or acts committed in pursuance thereof - the damage - not the conspiracy or the combination. The combination may be of no consequence except as bearing upon rules of evidence or the persons liable.

<u>Reid v. Holden</u>, 242 N.C. 408, 414-15 (1955)(*quoting* 11 Am.Jur., Conspiracy, § 45).

Thus, a cause of action for "civil conspiracy" is simply shorthand for an action for damages caused by acts committed in furtherance of a formed conspiracy.  The only possible cause of action recognized at common law has not been asserted by defendants.  As plaintiff argues, such an action would not lie in any event inasmuch as defendants have not alleged any actual damages stemming from the appraisal. Indeed, since the pleadings now before the court indicate that these defendants had already purchased the property and that they were refinancing loans held by an unidentified third party, the court cannot find that a reasonable inference of damage from an appraisal, either *wrongful* or negligent, arises from the defendants' pleadings.

Having considered North Carolina case law, the undersigned cannot find that

North Carolina would recognize a cause of action for negligent appraisal against any party other than the appraiser and that no reasonable interpretation of the common law would support the finding of a cause of action against the person who hired an appraiser who negligently issued a value opinion.. There being no appraiser joined as a counterclaim defendant herein and defendants having failed to state a cause of action against plaintiff for negligent appraisal, the court will recommend that the Fifth Counterclaim be dismissed in accordance with Rule 12(b)(6).

## B.      Motion to Dismiss Reinhardt Defendants' Counterclaims

### 1.      Inconsistent Pleading

Plaintiff first argues without citation to any case authority or rule that this court should dismiss the Reinhardt defendants' counterclaims because they are "so contradictory and inconsistent as to necessarily defeat their claims as a matter of law." Plaintiff's Memorandum in Support, at 5.  Plaintiff's argument is inconsistent with the plain and clear language of Rule 8(d)(3): "***Inconsistent Claims or Defenses.*** A party may state as many separate claims or defenses as it has, regardless of consistency."  Fed.R.Civ.P. 8(d)(3).  Other courts have explained the interplay between Rule 8(d)(3) and Rule 12:

> Plaintiffs also complain about inconsistencies between Defendants' answer, affirmative defenses, and counterclaims. (Dkt. No. 24 at 4-5.) This argument ignores Rule 8(d)(3), which explicitly allows

inconsistent pleadings: "A party may state as many separate claims or defenses as it has, regardless of consistency." Fed.R.Civ.P. 8(d)(3). Plaintiffs cannot properly support a 12(e) motion by identifying a feature of Defendants' pleading that Rule 8(d)(3) specifically allows, because Rule 12(e) is simply a mechanism to enforce the provisions of the other pleading Rules, including Rule 8.

Ultimate Timing, L.L.C. v. Simms, 2009 WL 1835943, 2 (W.D.Wash. 2009).[7] The undersigned, respectfully, rejects plaintiff's argument that defendants' counterclaims should be dismissed because they are contradictory or inconsistent.

### 2.    First Counterclaim: Fraud and Fraudulent Inducement

In their first counterclaim, the Reinhardt defendants assert a counterclaim for fraud and fraudulent inducement in the loan application process.  Specifically, these defendants allege that plaintiff was involved in forgery of the loan and closing documents, misrepresentations concerning the nature of the loan, unilaterally overstating defendants' income, and misrepresenting that they would not be required to verify their stated income. For the purpose of brevity, the undersigned incorporates herein as if fully set forth the discussion, as well as the resulting recommendation, concerning fraud as to the Wimer defendants' first counterclaim.  What is new in the Reinhardt defendants' first counterclaim is a claim, expressed in the alternative, that

---

[7]    Due to the limits of Electronic Case Filing, a copy of such unpublished decision is placed in the electronic docket through incorporation of the Westlaw citation.

the loan documents and their signatures thereon were forged.

These defendants' claims that their signatures on the loan documents were forged is barred as they failed to raise such issue in the foreclosure proceedings. In the underlying foreclosure proceeding, Honorable James U. Downs, North Carolina Superior Court Judge, entered an order allowing the foreclosure of the deed of trust, and a foreclosure sale was conducted on January 27, 2009, which became final on or about February 6, 2009, when the upset bid period ended. The Reinhardt defendants neither appealed the foreclosure order nor filed an independent civil action to enjoin the foreclosure on equitable grounds. N.C.Gen.Stat. § 45-21.27, 21.29, & 21.34. Thus, at no time did the Reinhardt defendants assert that their names had been forged by plaintiff on the loan documents, the promissory note, or the deed of trust. These defendants argued at the hearing that it their intent to prove forgery in this action and then to go back to state court with a Rule 60 motion to have the foreclosure set aside.

The essential elements of res judicata are a final judgment on the merits in the earlier suit, identity of the causes of action in the two suits, and identity of the parties in the actions. See Keith v. Aldridge, 900 F.2d 736 (4th Cir. 1990).

The claims of forgery concern documents the authenticity of which was, necessarily, relied upon by Judge Downs in issuing his foreclosure order. These defendants failure to raise such alleged forgery before the Superior Court in such

earlier action prevents assertion of such claims in this action.  Guess v. Board of Medical Examiners of North Carolina, 967 F.2d 998 (4th Cir. 1992).  The essential elements of *res judicata* are a final judgment on the merits in the earlier suit, identity of the causes of action in the two suits, and identity of the parties in the actions. Keith v. Aldridge, 900 F.2d 736 (4th Cir. 1990).

The Reinhardt defendants first argue that there is no identity of the parties in this and the underlying action inasmuch as the foreclosure action was brought by the trustee on the Deed of Trust, not plaintiff.  Such argument ignores well settled North Carolina case law that the beneficiary of the Deed of Trust is the real party in interest to foreclosure proceedings brought in the name of the trustee. Recently, the North Carolina Court of Appeals had occasion to address this issue, noting as follows:

> FN4. The Thomases errantly rely on N.C. Gen.Stat. §§ 45-21.16(a), (b), (d1), and (e), for the proposition that "the parties to a foreclosure of a deed of trust are the trustee[,] the obligor, and other persons who have a present or future interest in the property other than the owner or holder of the deed of trust which is the subject of the proceeding." Before the clerk may authorize a trustee to proceed in foreclosure under a deed of trust, the clerk must find the existence of, inter alia, a "valid debt of which the party seeking to foreclose is the holder[.]" N.C. Gen.Stat. § 45-21.16(d) (2005) (emphasis added). In this case, Ameriquest is the holder of the debt. Thus, Ameriquest is "the party seeking to foreclose." N.C. Gen.Stat. § 45-21.16(d).

In re foreclosure of a deed of trust executed by Thomas, 2009 WL 26702, 2

(N.C.App. 2009) (Table case).[8]  The appellate court held that the holder of the promissory note, to wit, the bank, was the real party in interest in a foreclosure proceeding.  Id.  The first element of *res judicata* is satisfied as there exists identity of the parties in the state foreclosure action and this diversity deficiency action.

The undersigned has also considered mutuality of claims.  While this action is clearly in the nature of a deficiency action and the state action was for foreclosure, the court looks to whether the claim raised in this action is the type of matter that was or should have been raised in the prior action.  McInnis & Assoc., Inc. v. Hall, 318 N.C. 421, 428 (1986).  Clearly, forgery of signatures on loan documents, the promissory note, and/or the Deed of Trust is the type of claim that should have been raised in opposition to the foreclosure.  Indeed, had these defendants proven to the state court that their signatures had been forged on the instruments, it is certain that the foreclosure would not have gone forward.  See N.C.Gen.Stat. § 45-21.16(d)(requiring a finding of a valid debt to go forward with foreclosure).  Judge Down's order specifically found a valid debt:

> 1.    Kelly M. Baker and Michael T. Baker ("Borrowers") executed and delivered to SunTrust Mortgage, Inc. ("SunTrust") and Adjustable Rate Note dated June 29, 2007 to evidence a loan by SunTrust in the

---

[8]    Due to the limits of Electronic Case Filing, a copy of such unpublished decision is placed in the electronic docket through incorporation of the Westlaw citation.

original principal amount of $1,5000,000.00 ("the Note").

2.     As security for the Note, Borrowers executed and delivered to SunTrust, as beneficiary, a deed of trust dated June 29, 2007 and recorded on July 5, 2007 . . . .

Plaintiff's Memorandum in Support, Ex. C., Order, at ¶¶ 1 & 2.

Finding that there was a final judgment on the merits in the earlier suit, identity of the causes of action in the two suits, and identity of the parties in the actions, the undersigned must respectfully recommend that this counterclaim be dismissed under Rule 12(b)(6). <u>Andrews v. Daw</u>, 201 F.3d 521, 524 (4th Cir.2000) (holding that dismissal on *res judicata* grounds is proper under Rule 12(b)(6) unless a disputed issue of material fact exists); <u>Richmond, Fredericksburg & Potomac R.R. Co. v. Forst</u>, 4 F.3d 244, 250 (4th Cir.1993) (noting that a Rule 12(b)(6) motion "is intended to test the legal adequacy of the complaint").

### 3.     Second Counterclaim: UDTPA

In the Reinhardt defendants' second counterclaim, they assert a claim for Unfair and Deceptive Trade Practices. Specifically, the allege that same conduct alleged in their First Counterclaim amounted to an unfair and deceptive trade practice and constituted a pattern of practice as to other investors in the same subdivision. For the purposes of brevity, the undersigned incorporates and set forth fully the discussion concerning the Wimer defendants' Third Counterclaim as well as the

result.

**RECOMMENDATION**

**IT IS, THEREFORE, RESPECTFULLY RECOMMENDED** that

    (1)    2:09cv3: plaintiff's Motion to Dismiss (#19);

    (2)    2:09cv4: plaintiff's Motion to Dismiss (#20);

    (3)    2:09cv5: plaintiff's Motion to Dismiss (#10);

    (4)    2:09cv6: plaintiff's Motion to Dismiss (#21);

    (5)    2:09cv7: plaintiff's Motion to Dismiss (#20);

    (6)    2:09cv9: plaintiff's Motion to Dismiss (#21);

    (8)    2:09cv10: plaintiff's Motion to Dismiss (#20);

    (9)    2:09cv11: plaintiff's Motion to Dismiss (#17);

    (10)    2:09cv12: plaintiff's Motion to Dismiss (#18);

    (11)    2:09cv13: plaintiff's Motion to Dismiss (#20);

    (12)    2:09cv14: plaintiff's Motion to Dismiss (#19); and

    (13)    2:09cv15: plaintiff's Motion to Dismiss (#20),

be **ALLOWED** and that all counterclaims asserted by all defendants herein be

**DISMISSED** in accordance with Rule 12(b)(6) as claims are not therein stated.

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(C), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within ten (**10**) days of service of same. Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986); United States v. Schronce, 727 F.2d 91 (4th Cir.), cert. denied, 467 U.S. 1208 (1984).

Signed: July 13, 2009

Dennis L. Howell
United States Magistrate Judge