# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# BRYSON CITY DIVISION
## 2:09cv3
[consolidating: 2:09cv3; 2:09cv4;
2:09cv5; 2:09cv6: 2:09cv7; 2:09cv8;
2:09cv9; 2:09cv10; 2:09cv11; 2:09cv12;
2:09cv13; 2:09cv14; and 2:09cv15]

| | |
|---|---|
| SUNTRUST MORTGAGE, INC., a Virginia corporation, ) ) ) Plaintiff, ) ) Vs. ) ) DONALD D. BUSBY; LORI A. ) NASSIDA; KELLY M. BAKER; ) MICHAEL T. BAKER; ROBERT ) JOHN CUPELLI; LEIGH K. ) CUPELLI; DEANNA DAVIS; DEAN ) R. CUMMINGS; JEFFREY A. ) SYKES; GUY BARHOMA; ROBERT ) G. RONK; GREGORY M. SCHUETZ; ) KENNARD M. DAVIS; and PAUL J. ) MULA, ) ) Defendants. ) _____ ) | ORDER |

**THIS MATTER** is before the court on John J. Pavey, Jr.'s (a non-party) Motion to Quash (#54) a subpoena served on him by plaintiff. Plaintiff has timely filed a response to such non-party motion, Docket Entry #55, and the Wimer

-1-

defendants have filed a timely Reply. Docket Entry #55. Mr. Pavey has not filed a Reply. On September 25, 2009, defendants served their Objection to Subpoena on SunTrust. See Docket Entry #55-3.

On September 14, 2009, a subpoena was issued commanding Mr. Pavey, an attorney, to produce certain documents related to "property closings," which in turn was defined by the subpoena as referring to

> each of the residential real estate closings that were handled by Pavey & Smith, P.A. . . . between April 17, 2007[,] and August 31, 2007, as set forth in the HUD-1 settlement statements that are collectively attached hereto as Exhibit 1.

Docket Entry 55-2, at 2, ¶ 3. In moving to quash and responding to such motion, the parties and non-party have presented arguments concerning the production of three sets of documents:

(1) the closing documents Mr. Pavey has in his possession concerning the closing between the Wimer defendants and the developer (the "original closings"), all of which occurred in 2006;

(2) the closing documents Mr. Pavey has in his possession concerning the closing between the Wimer defendants and Suntrust (the "construction loan closings") which occurred in 2007; and

(3) the foreclosure documents Mr. Pavey has in his possession concerning his representation of the Wimer defendants in the foreclosure proceedings.

Based on exhibit one annexed to Suntrust's Response, documents concerning the original closings are not within the scope of their subpoena and such production can be neither quashed nor compelled as such have not been demanded. The court will, therefore, limit the inquiry to documents related to the construction loan closings and the foreclosure proceedings.

As will be discussed below, Mr. Pavey, and his firm, Pavey & Smith, P.A., acted as the settlement agent for the seller and buyers during the original closings and then represented the buyers and SunTrust again during the construction loan closings. For the reasons discussed below the court will deny the motion to quash as to the documents related to the construction loan closings, and allow the motion to quash as to any documents related to Mr. Pavey's representation of these defendants during the foreclosure proceedings.

While the original loan closing documents are outside the scope of the demand, the parties are respectfully advised to first review the decision in Hunt v. Blackburn, 128 U.S. 464, 470-71 (1888), which discusses waiver of privilege by putting the communications with their attorney at issue in this judicial proceeding. See Hunt v. Blackburn, 128 U.S. 464, 470-71 (1888). If this issue is raised in a subsequent Motion to Quash or to Compel, the court would appreciate briefing on the issue of how dismissal of the counterclaims which placed such communications at issue

impacts decision.

## DISCUSSION

**I.     Documents Related to the Construction Loan Closings**

As briefly discussed above, the construction loan closings documents are clearly within the scope of the demand contained in the subpoena. While defendants assert in their Reply that an attorney-client relationship existed between them and Mr. Pavey in such closings with SunTrust, the Answers filed by the various defendants as well as the closing instructions are antithetical to such argument.[1] It is undisputed that Mr. Pavey was the only attorney for either side at any of the construction loan closings.

SunTrust has shown that it sent Mr. Pavey closing instructions, which, in paragraph six stated: "[b]y closing this loan you, the closing agent, agree to represent SunTrust …." See Plaintiff's Ex. 4.2. At most, defendants can assert that Mr. Pavey undertook a joint representation at the closing. Inasmuch as Mr. Pavey represented both the lender and the borrower at the closing, defendants simply have no attorney-client privilege to assert with respect to documents generated for these closings. According to Rule 1.7, Comment 30, of the North Carolina Rules of

---

[1] The Baker defendants appear to contend that no attorney-client relationship existed as to the closing inasmuch as they have alleged that they never participated in a closing with SunTrust and that their names were forged.

Professional Conduct, "as between commonly represented clients, the privilege does not attach." In the context of an ordinary residential mortgage loan transaction - - where the borrower and lender's interests are generally aligned - - the closing attorney "represents both the borrower and the lender in the absence of clear notice to all concerned that such is not the case," RPC 44 (adopted July 15, 1988), and that if

> the lawyer does not intend to represent both the buyer and the lender, the lawyer must give timely notice to the party that the lawyer does not intend to represent …. If the lawyer does not give such notice, the lawyer will be deemed to represent both the buyer and the lender.

N.C. R.P.C. 210 ( adopted April 4, 1997). Defendants arguments in their Reply that it was the duty of the attorney to provide notice that he intended to represent both sides and that absent such notice he represents only the buyer, while an appealing consumer oriented argument, finds no basis in current law or in the Rules of Professional Conduct. Rather, to adopt such argument would require standing the ethical rules on their heads.

With such considerations in mind, the court turns to the ultimate question of whether an attorney-client privilege arises during the course of joint representation in a real estate closing which can be enforced by one party against another. In North Carolina, an attorney-client privilege arises when:

> (1) the attorney-client relationship must have existed at the time of the communication; (2) the communication must have been made in

> confidence; (3) the communication must relate to a matter concerning which the attorney is employed or is being professionally consulted; (4) the communication must be made in the course of seeking or giving legal advice; and (5) the privilege is that of the client. 1 Brandis, North Carolina Evidence, § 62 (3rd ed. 1988). Longstanding North Carolina authority provides that the privilege is to be narrowly construed and does not extend to declarations made prior to the formation of an attorney-client relationship.

Phillips v. Dallas Carriers Corp., 133 F.R.D. 475, 479 (M.D.N.C.1990). Clearly, while attorney-client relationships developed during the construction loan closings, there can be no reasonable expectation that communications between the attorney and the jointly represented parties to such closings were confidential, at least as between the jointly represented clients. Finding that no privilege arises as a matter of North Carolina law, the court will deny the Motion to Quash. Mr. Pavey will be respectfully compelled to produce these documents as commanded.

## II.  Documents Related to the Foreclosure Proceedings

Plaintiff also demands in its subpoena that Mr. Pavey produce documents generated in relation to his later representation of these same defendants in the state foreclosure proceedings before Honorable James U. Downs, North Carolina Superior Court Judge. Plaintiff contends that Mr. Pavey has effectively waived the attorney-client privilege because he failed to submit a privilege log of documents to which he was claiming privilege, which is required by Rule 45, Federal Rules of Civil

Procedure. Defendants appear to have annexed a privilege log to their Reply. See Defendants' Ex. D.

First, unlike the closings where no attorney-client privilege arose, it does not appear that Mr. Pavey represented both SunTrust and these defendants in the foreclosure proceeding or that his former representation of SunTrust in any way amounted to a waiver of privilege in a later representation of the Wimer defendants in a foreclosure proceeding. See Phillips v. Dallas Carriers Corp., supra. Defendants have satisfactorily shown that a privilege has arisen as to the communications between Mr. Pavey and his clients in foreclosure actions.

Second, while there is no doubt that Rule 45 requires a party seeking to quash a subpoena on the basis of privilege to submit a privilege log, it does not logically follow that an attorney, who lacks the ability to waive the attorney-client privilege affirmatively, has the ability to waive such privilege through inaction or oversight. "The attorney-client privilege belongs to the defendant and may be waived by him." State v. Bronson, 333 N.C. 67, 77 (1992) (citation omitted). The privilege belongs to the client and no one else. In re Miller, 357 N.C. 316 (2003). "Although an attorney may assert the privilege when necessary to protect the interests of the client, the privilege belongs solely to the client." Id., at 339. While Mr. Pavey could certainly *assert* the defendants' privilege, the court can find no authority for the

position that he may *waive* it through inaction.

The court must, therefore, allow the Motion to Quash as to documents generated in relation to Mr. Pavey's representation of defendants during the foreclosure as plaintiff has not overcome the attorney-client privilege at this point. Such allowance will, however, be without prejudice as to plaintiff seeking such documents from defendants, who may then seek a protective order. Nothing in this Order should be interpreted, however, as preventing plaintiff from obtaining whatever documents are available in the foreclosure proceeding from any public source, such as the Jackson County Courthouse.

**ORDER**

**IT IS, THEREFORE, ORDERED** that John J. Pavey, Jr.'s Motion to Quash (#54) is **GRANTED** as to communications and documents concerning his representation of these defendants in regards to the foreclosure proceedings, and **DENIED** as to communications and documents generated in relation to his representation of these defendants in the construction loan closings. Mr. Pavey is respectfully compelled to produce such documents demanded by the subpoena relting to the construction loan closings within 14 days of receipt of this Order.

In light of the important and somewhat novel issues raised, as well as the mixed

resolution of such issues, it would be unjust to award costs to any party or the non-party, and all parties and the non-party shall respectfully bear their own costs as to the Motion to Quash.

Any documents or copies inadvertently produced by Mr. Pavey (if any) that are subject to the Order quashing the subpoena shall be promptly returned to Mr. Pavey.

Signed: November 3, 2009

Dennis L. Howell
United States Magistrate Judge