IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
BRYSON CITY DIVISION
2:09cv3
[consolidating: 2:09cv3; 2:09cv4;
2:09cv5; 2:09cv6: 2:09cv7; 2:09cv8;
2:09cv9; 2:09cv10; 2:09cv11; 2:09cv12;
2:09cv13; 2:09cv14; and 2:09cv15]

| | | |
|---|---|---|
| SUNTRUST MORTGAGE, INC., a Virginia corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| Vs. | ) ) | ORDER |
| DONALD D. BUSBY; LORI A. NASSIDA; KELLY M. BAKER; MICHAEL T. BAKER; ROBERT JOHN CUPELLI; LEIGH K. CUPELLI; DEANNA DAVIS; DEAN R. CUMMINGS; JEFFREY A. SYKES; GUY BARHOMA; ROBERT G. RONK; GREGORY M. SCHUETZ; KENNARD M. DAVIS; and PAUL J. MULA, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**THIS MATTER** is before the court on all defendants' Motion to Stay these

proceedings in their entirety until March 10, 2010, because

> there is an ongoing criminal investigation into the loans these
> defendants obtained from SunTrust, and requiring the defendants to

> participate in discovery at this point would jeopardize their privileges and their strategy for dealing with the criminal investigation.

Motion for Stay (#61), at 1. Plaintiff opposes such relief, arguing that defendants have failed to show "clear and convincing circumstances" upon which such a stay could be based. Response (#65), at 2.

## FINDINGS AND CONCLUSION

### I.  Counsel for Defendants' Statement in Reply

It their Reply, counsel for defendants have made an assertion which needs to be addressed from the outset. Counsel for defendants has made the following statement:

> The cases cited by SunTrust are distinguishable because those cases do not involve the Court alerting the United States Attorney's Office to allegations of criminal misconduct in the civil case. Defendants respectfully submit that publicly alerting the United States Attorney's Office to allegations of criminal fraud in a civil case is an unusual, if not unprecedented, action.

Reply, at 9. Such statement contains no citation of authority, does not accurately reflect the method the court employed to provide notice to the United States Attorney, and fails to mention that the court was required to take such action. Because such statement would tend to undermine public confidence in the judiciary, the court will briefly address it before reaching the substance of defendants' motion.

First, the court is concerned with counsel for defendants' characterization that

the court has "publicly alert[ed] the United States Attorney's Office" to allegations of criminal fraud. Id. While it is certainly true that the court "alerted" the United States Attorney through an Order which is "publicly" available, defendants' statement does not mention that the court did so by and through a written Order, which is the manner in which courts permissibly communicate. The court will clarify defendant's statement by making reference to the actual record. On June 11, 2009, after conducting a close review of the complaints and supporting documents in light of defendants' motion to dismiss, the court discovered that the court's docket contained evidence of possible federal criminal misconduct, to wit, annexed to the complaints were loan application documents that appeared to contain patently false information. After advising the district court of the presence of such material, the court noted such in its Order and instructed the Clerk of this court to send a copy of such Order to the United States Attorney. See Order (#29). Specifically, the court noted:

> It appearing that evidence has been filed with this court of possible bank, wire, and/or mail fraud [commonly but inaccurately called "Mortgage Fraud"], the court is by copy of this Order alerting the United States Attorney for the Western District of North Carolina of such fact in fulfillment of the court's duty to avoid misprision of a felony. In so fulfilling its duty, the court makes no finding as to who may be complicit or responsible for any criminal conduct as that issue is not before the court.

Id., at f.n. 3. While the court "publicly informed" the United States Attorney, it did so by means of a footnote in an Order.

Second, and perhaps of more concern, is counsel for defendants' statement that the court's action is "unprecedented." While it is fair to state that advising the government of possible criminal misconduct arising from or discovered in a civil case is rare, use of the word "unprecedented" conveys to the public that the court is taking rogue action, which may also diminish public confidence in the judiciary. Had counsel for defendant searched the very words he used in making such statement in Westlaw, he would have found the following:

> After extensive discovery, the district court alerted the United States Attorney about a possible perjury investigation.

DeGeorge v. U.S. Dist. Court for Cent. Dist. of California, 219 F.3d 930, 933 (9th Cir. 2000). In DeGeorge, the district court alerted the United States Attorney to potential perjury occurring in the civil action for declaratory relief based on "civil fraud," which later resulted in a criminal prosecution of Mr. DeGeorge. The court is unsure what other word combinations would result in discovery of additional reported cases, but suffice it to say that had defendants searched the very words they used in their brief, they would have discovered DeGeorge, which would have eliminated the inaccurate use of the word "unprecedented." Thus, this court's action

is not "unprecedented" based on reported case law.

Even is counsel for defendants did not conduct a search of Westlaw, they would not have had to look any further than the docket of the Asheville Division to find other examples of the court alerting the United States Attorneys Office to possible criminal misconduct arising from or discovered in a civil case. In <u>Singleton v. Temporary Disability Benefits Plan</u>, 1:03cv64 (W.D.N.C. 2005),[1] the undersigned held, as follows:

> it appears that such submissions contain evidence of possible violations of federal criminal laws concerning bank operations of a federally insured financial institution. By submitting such materials to a federal judge, the parties have put the court in an untenable position: on the one hand, courts wish to encourage parties to settle their civil disputes in accordance with law; on the other, courts have an affirmative duty to abide by all laws, criminal as well as civil, and nothing less is expected or should be expected of courts by the public. One such law that all persons, including federal judges, must comply with is misprision of a felony, which in and of itself is a felony under 18, United States Code, Section 4.

Memorandum of Decision, at 13. A similar referral to the United States Attorneys Office was made by the district court in <u>Byrd v. Hopson</u>, 1:02cv212 (W.D.N.C. 2003), for possible criminal misconduct therein occurring. Thus, defendants use of the word "unprecedented" is also unfounded based on a review of the docket in the

---

[1] Such decision was later reversed on others grounds in an unpublished decision, <u>Singleton v. Temporary Disability Benefits Plan</u>, No. 05-1341 (4th Cir. May 19, 2006).

Asheville Division.

In conclusion, the court will strike such statement from the record as impertinent under Rule 12(f), Federal Rules of Civil Procedure. Counsel for defendants is instructed to exercise greater care in the future when using words that, though undoubtedly well intended, ascribe improper conduct to the judiciary where in fact the court is simply doing what it has sworn to do in the manner in which it required to do it. Counsel for defendants should be aware that in dealing with the federal judiciary, there is a keen judicial awareness of federal offenses as a good part of every federal judge's day is spent dealing with federal felonies. Equally, federal civil litigants should be aware that unlike the privilege that attaches to disclosures made to priests, lawyers, and physicians, all federal judicial officers take a oath to "perform all the duties incumbent . . . under the Constitution and laws of the United States." 28 U.S.C. § 453. Among those duties is an obligation to uphold and obey the laws of the United States, not the least of which is 18, United States Code, Section 4, which criminalizes misprision of a felony:

> Whoever, having knowledge of the actual commission of a felony cognizable by a court of the United States, conceals and does not as soon as possible make known the same to some judge or other person in civil or military authority under the United States, shall be fined under this title or imprisoned not more than three years, or both.

18 U.S.C. § 4. There is no "federal judge" exception that the court can find to this

felony.

The court does not undertake such duty to report lightly. As noted in the Order, it is not evident from the materials who, if anyone party to this action, is responsible for creation of what appear to be fraudulent statements. Upon discovery of such evidence, however, the undersigned made the presence of such evidence known to the undersigned's superior, the district judge to whom this case was then assigned, who instructed the undersigned to notify the United States Attorneys Office in the manner utilized in the June 11, 2009 Order. As in <u>Singleton</u>, the submission of such evidence to the court placed the court in a most difficult situation. The court believes it has discharged its duty as required by law and would not hesitate to do so again if so required.

**II.     Motion to Stay Pending Resolution of Criminal Investigation**

Putting aside the stricken statement in defendants' Reply, the court has closely considered defendants argument that this action should be stayed pending resolution of the criminal investigation. While the court has considered defendants' argument as well as the affidavit from Mr. Banzhoff, in which he avers that an ongoing criminal investigation of the transactions underlying this action may be ongoing in the Southern District of Florida. He avers that agents of the Federal Bureau of Investigation (the "FBI") have attempted to talk with "one of the defendants in this

action," but does not identify such defendant, and further states the FBI "would like to interview all the defendants in this civil action." Banzhoff Aff., at ¶¶ 7-8.

Defendants also argue in their reply that the "cases cited by SunTrust are distinguishable because those cases do not involve the Court alerting the United States Attorney's Office to allegations of criminal misconduct in the civil case." Reply, at 9. Defendants fail to mention that the public and press were well aware of the transactions underlying this case well before June 11, 2009. Indeed, defendants need not have looked any further than their own "Exhibit B," which contains three newspaper articles which predate the court's June 11, 2009, Order. Defendants go on to point out that "[o]ne of these articles was published a mere three days ago in the *Asheville Citizen Times* and quotes from the very motion the Court is now considering." Reply, at 10. However, in the lead of such December 1, 2009, story, the newspaper points to defendants' own motion as the source of information concerning the purported ongoing investigation. See Defendants' Ex. B., at 1. Thus, it would appears that defendants are the very source of the publicity they now eschew.

Turning to the substance of the request, defendants ask that this action be stayed because:

> [t]hey cannot adequately defend . . . for fear that their testimony and evidence might be used against them in connection with the criminal proceedings.

Defendants' Brief in Support, at 2. Close review of the entirety of the defendants' pleadings does not indicate that any "criminal proceedings" have been commenced against them. While the affidavits indicate that an interview of an unnamed defendant has been "attempted" by the FBI and that the FBI would like to interview all defendants, they have not come forward with any target letter issued by any prosecutor. Thus, the question is not whether this action should be stayed pending the resolution of any criminal proceedings, but whether this action should be stayed pending resolution of a possible ongoing criminal investigation.

Resolution of that issue is dependent on consideration of a number of factors under applicable case law. In cases dealing with this issue, courts have held as follows:

> In a case where there is a real and appreciable risk of self-incrimination, an appropriate remedy would be a protective order postponing civil discovery until termination of the criminal action. *United States v. Kordel*, 397 U.S. 1, 8-9, 90 S.Ct. 763, 767-68, 25 L.Ed.2d 1 (1970). When the criminal investigation or prosecution parallels the ongoing civil action, the Fifth Circuit, using a balancing approach, has determined the appropriate remedy is a stay of discovery that might expose the party to a risk of self-incrimination. *Wehling v. Columbia Broadcasting System*, 608 F.2d 1084 (5th Cir.1979), *reh'g denied*, 611 F.2d 1026, 1027 (5th Cir.1980).

Brumfield v. Shelton, 727 F.Supp. 282, 284 (E.D.La. 1989).

This balancing test discussed in the Fifth Circuit is nearly identical to the test

applicable in the Fourth Circuit.[2] In conducting such balancing of interest, it is critical to understand that a party may invoke his or her fifth amendment privilege against self incrimination in a civil action just as it may be invoked in a criminal proceeding or investigation.

> For Feldten need not have answered the interrogatories. Without question he could have invoked his Fifth Amendment privilege against compulsory self-incrimination. Surely Feldten was not barred from asserting his privilege simply because . . . the proceeding in which the Government sought information was civil rather than criminal in character.

United States v. Kordel, 397 U.S. 1, 7-8 (1970). As the Court of Appeals for the Fifth Circuit noted, a defendant may invoke such privilege even if there are no pending charges and even where the risk of prosecution is remote.

> If a party reasonably apprehends a risk of self-incrimination, he may claim the privilege though no criminal charges are pending against him, Savannah Sur. Associates, Inc. v. Master, 240 Ga. 438, 439, 241 S.E.2d 192, 193 (1978), and even if the risk of prosecution is remote. In re Master Key Litigation, 507 F.2d 292, 293 (9th Cir. 1974).

Wehling v. Columbia Broadcasting System, 608 F.2d 1084, 1087 (5th Cir. 1979). The appellate court in Wehling went on to address the practical problem which asserting one's fifth amendment right in a civil case presents:

---

[2] As plaintiff points out in its responsive brief, there are no reported decisions from federal district courts in North Carolina dealing with the question of whether a civil action between private parties should be stayed pending a criminal investigation. Thus, the undersigned has looked for and found decisions in sister jurisdictions which are consistent with the Fourth Circuit's balancing test.

The question here, however, is not whether Wehling had a right to invoke the constitutional privilege against self-incrimination, which he did, but what effect the assertion of this privilege would have on his libel action against CBS. Wehling argues that dismissing his lawsuit because he asserted his self-incrimination privilege in effect penalized him for exercising a fundamental constitutional right. He claims that the district court abused its discretion by making the invocation of the Fifth Amendment privilege "costly." *Malloy v. Hogan*, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964). CBS, on the other hand, argues that the district court properly respected the rights of both parties when, though recognizing Wehling's right to assert the self-incrimination privilege, it remedied the resulting unfairness to CBS by dismissing the action. Furthermore, CBS contends that postponing discovery pending termination of the grand jury proceedings or expiration of the limitations period would prejudice its efforts to prepare a defense to Wehling's claim.

We do not dispute CBS's assertion that it would be unfair to permit Wehling to proceed with his lawsuit and, at the same time, deprive CBS of information needed to prepare its truth defense. **The plaintiff who retreats under the cloak of the Fifth Amendment cannot hope to gain an unequal advantage against the party he has chosen to sue. To hold otherwise would, in terms of the customary metaphor, enable plaintiff to use his Fifth Amendment shield as a sword. This he cannot do.** *See, e. g., Lyons v. Johnson*, 415 F.2d 540 (9th Cir. 1969); *Kisting v. Westchester Fire Ins. Co.*, 290 F.Supp. 141 (W.D.Wis. 1968). Wehling, however, has not claimed the right to proceed to trial without answering the questions posed by CBS during the deposition. Instead, Wehling asks only that discovery be stayed until all threat of criminal liability has ended. We must decide whether, under the circumstances of this case, plaintiff should have been required to forego a valid cause of action in order to exercise his constitutional right to avoid self-incrimination.

Id. (emphasis added).

In this case, however, defendants seek a stay prior to asserting their fifth

amendment privilege as to any discovery requests or any deposition question. Clearly, the Court of Appeals for the Fourth Circuit requires one who invokes the fifth amendment privilege in a civil action as a basis for a stay to "do so with sufficient particularity to allow an informed ruling on the claim." North River Ins. Co. v. Stefanou, 831 F.2d 484, 486-87 (4th Cir. 1987). The appellate court held that the court was under no obligation to accept a blanket invocation of the privilege, as follows:

> Stefanou incorrectly argues that the district court erred in failing to pierce his blanket assertion of privilege to determine its relative merits. A party wishing in good faith to assert the privilege must do so "with respect to particular [allegations]," thereby allowing the trial judge to determine the propriety of each refusal. *General Dynamics Corp. v. Selb Manufacturing Co.*, 481 F.2d 1204, 1212 (8th Cir.1973), *cert. denied*, 414 U.S. 1162, 94 S.Ct. 926, 39 L.Ed.2d 116 (1974) (*citing Hoffman v. United States*, 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951)). The privilege also may be asserted and preserved in the course of discovery proceedings, Fed.R.Civ.P. 26(c), but in specifics sufficient to provide the court with a record upon which to decide whether the privilege has been properly asserted as to each question. *United States v. Gordon*, 634 F.Supp. 409, 418 (Ct.Int'l Trade 1986).
>
> The district court correctly ruled that the privilege was not properly invoked. Stefanou's potential for criminal liability had been narrowed significantly by the guilty plea already entered. Further concerns could have been met by good-faith responses tailored to address specific allegations in the complaint. Instead, he chose a course of action which left the district court with no reasonable alternative other than to enter judgment against him. Fed.R.Civ.P. 8(d).

Id., at 487. Just as a blanket assertion of the fifth amendment privilege is insufficient

to invoke the privilege itself, the undersigned finds that it provides an insufficient basis upon which to stay a civil action.

With those issues in mind, the court will conduct the balancing test provided in <u>Williford v. Armstrong World Industries, Inc.</u>, 715 F.2d 124, 127 (4th Cir. 1983), which requires that clear and convincing circumstances be shown in support of the stay that outweigh potential harm to the non-moving party. The district court's decision in <u>AvalonBay Communities, Inc. v. San Jose Water Conservation Corp.</u>, 2007 WL 2481291 (E.D.Va. 2007), <u>aff'd</u>, 2009 WL 1336717 (4th Cir. 2009), is instructive, and will be quoted at length as it provides this court with substantial guidance:

> Courts have discretion in whether to grant a motion to stay. *Landis v. North American Co.*, 299 U.S. 248, 254 (1936). The power to stay is within the court's control of the docket. *See Id.* The parties and issues do not need to be the same for the court to grant a stay in one case to accommodate another case. *See Id.* Federal courts have used the balancing test set in *Landis* that weighs the hardship to the moving party against the prejudice to the opposing party. *See Id.* at 255 (holding that a party requesting a stay must show hardship if there is even a fair possibility that a stay would damage the opposing party); *see also Williford v. Armstrong World Indus., Inc.*, 715 F.2d 124, 127 (4th Cir.1983) ("Party seeking stay must justify it by clear and convincing circumstances outweighing potential harm to the party against whom it is operative."). Additional considerations have been interests of persons not party to the civil litigation, the public interest, the danger of discovery abuse, bad faith, the status of the criminal proceedings, etc. *See Afro-Lecon, Inc. v. United States*, 820 F.2d 1198, 1202-1204 (Fed.Cir.1987); *In re Phillips, Beckwith & Hall*, 896 F.Supp. 553, 558

> (E.D.Va.1995).
>
> The court in *In re Mid-Atlantic Toyota Antitrust Lit.* used a five factor test that includes some of the additional factors that federal courts have considered in stay motions: (1) interest of plaintiff in proceeding expeditiously balanced against prejudice to plaintiff caused by delay, (2) burden on defendant, (3) convenience to the court, (4) interests of persons not party to the civil litigation and (5) the public interest. 92 F.R.D. 358, 359 (D.C.Md.1981).
>
> Much of the case law involving motions to stay civil proceedings until the completion of criminal proceedings concerns cases where the government is opposing the same private party. *See In re Phillips*, 896 F.Supp. at 557 (noting the dilemma surrounding use of Fifth Amendment in parallel cases can arise between private litigants but more often when the government is the opposing party). Courts have been concerned that in these cases the government will purposely initiate parallel civil and criminal proceedings to (1) use the more liberal civil discovery rules to gain information for the corresponding criminal trial that would normally be restricted under criminal discovery rules and (2) to gain advantage in the civil trial by forcing parties to choose between exposing themselves to criminal prosecution by testifying or asserting the Fifth Amendment and, thereby, damaging their civil defense. *See In re Phillips*, 896 F.Supp. at 558. An adverse inference can be drawn against litigants who assert their Fifth Amendment right in a civil proceeding. *See Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976).

Id., at 1-2. The district court went on to deny the request for stay. While recognizing that the movant's fifth amendment privilege was implicated in the civil proceeding, the court determined that the potential for prejudice outweighed any constitutional burden on defendants. The court found that such prejudice to plaintiff stemmed from the undetermined time any potential criminal prosecution would take, which would make it more likely that documents would be misplaced, memories would fade, and

defendants would have fewer financial resources with which to pay any judgment. Id. The district court also placed in the balance the fact that the movants had not been indicted and were not under the simultaneous obligation to prepare a criminal defense.

This court too has attempted to balance the constitutional burden defendants face with the prejudice plaintiff faces if it is made to await resolution of any possible criminal investigation and possible criminal prosecution. While defendants' blanket assertion of their fifth amendment rights is not a proper starting point from which to consider a motion for stay, the court has presumed that defendants would be constitutionally burdened by having to decide between an adequate civil defense and possibly giving criminal prosecutors incriminating evidence.

In considering plaintiff's desire to proceed expeditiously, the court has considered that a stay is most appropriately granted where a defendant's fifth amendment privilege is under real and present duress, which is where such a party is under indictment. In SEC v. Dresser Indus. Inc., 628 F.2d 1368 (D.C.Cir. 1980), the appellate court held that:

> the strongest case for deferring civil proceedings until after completion of criminal proceedings is where a party under indictment for a serious offense is required to defend a civil or administrative action involving the same matter.

Id., at 1376. This court concurs. As this court has found, the mere possibility that one may be the subject of an ongoing investigation is no guarantee that one will be indicted or that the investigation will go any further than an Assistant United States Attorney's desk. If such matter proceeds further, it may in fact take years to for a grand jury to complete its investigation, which is also no guarantee that an indictment will issue. As the district court found in AvalonBay,

> [t]he burden on a party in making incriminating statements weighs more heavily when serious charges have been initiated and the constitutional obligation of a speedy criminal trial could help protect the opposing civil party from a significant delay.

Avalonbay Communities, Inc. v. San Jose Water Conservation Corp., 2007 WL 2481291, 3 (E.D.Va. 2007). While this court greatly respects Mr. Banzhoff's averments as well as his suspicions that these defendants may be the targets of a criminal investigation, the court can see little distinction between the situation faced in AvalonBay and the situation these defendants present. Assuming the investigation Mr. Banzhoff suspects, such could go on for years and does not come with the certainty that a federal indictment brings, which is disposition of charges within the bounds of the Speedy Trial Act. The district court in Avalonbay addressed this precise concern:

> A stay that is unrestricted in scope will certainly prejudice Plaintiff by risking the loss of documents, the fading of witnesses'

> memories, and the deterioration of Defendants' financial resources available for any judgment obtained by Plaintiff. Defendants argue that the cases will involve the same facts and evidence will thus be preserved. Because the commencement date of any criminal proceeding and the exact nature of these proceedings is unknown, Defendants can not guarantee that evidence will not be lost before criminal prosecution.

Id., at 4. Thus, the undersigned concludes that granting a stay where no indictment has issued and no target letters have been provided would amount to an indefinite stay of these proceedings that could well last years. During such period, plaintiff would be severely prejudiced in its ability to preserve evidence as well as secure satisfaction of any monetary judgment it may receive.

The court has also considered the other relevant facts. A stay is not in keeping with the speedy resolution of cases in this division, there are no interests of third parties that have been identified by the parties, and it is not in the public interest to require plaintiff, which has promptly asserted its causes of action, to wait indefinitely because defendants may also be subject to a criminal investigation or criminal prosecution on the same or substantially the same underlying allegations.

Having conducted the balancing test, the undersigned respectfully finds that the prejudice to plaintiff through unrestricted delay outweighs defendants' constitutional concerns at this juncture.

# ORDER

**IT IS, THEREFORE, ORDERED** that defendants' Motion to Stay (#61) is **DENIED** without prejudice as to filing a new motion in the event of indictment or defendants receiving target letters from a grand jury.

Signed: December 7, 2009

Dennis L. Howell
United States Magistrate Judge