# IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## BRYSON CITY DIVISION

### CIVIL CASE NO. 2:09cv03
**[Lead case consolidating 2:09cv04; 2:09cv06; 2:09cv07; 2:09cv08; 2:09cv09; 2:09cv10; 2:09cv11; 2:09cv12; 2:09cv13; 2:09cv14 & 2:09cv15]**

| | |
|---|---|
| SUNTRUST MORTGAGE, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **MEMORANDUM OF** |
| ) | **DECISION AND ORDER** |
| ) | |
| DONALD D. BUSBY, LORI A. NASSIDA,) | |
| ROBERT JOHN CUPELLI, LEIGH A. ) | |
| CUPELLI, DEANNA DAVIS, DEAN R. ) | |
| CUMMINGS, JEFFREY A. SYKES, ) | |
| GUY BARMOHA, ROBERT G. RONK, ) | |
| GREGORY M. SCHUETZ, KENNARD ) | |
| M. DAVIS, PAUL J. MULA and ) | |
| NATALIE BOUTROS, ) | |
| ) | |
| Defendants. ) | |

**THIS MATTER** is before the Court on the Plaintiff's Consolidated Motion for Partial Summary Judgment [Doc. 76].

## PROCEDURAL HISTORY and FACTUAL BACKGROUND

Each of the above numbered cases was filed on January 26, 2009 and subsequently consolidated by Order entered on June 11, 2009. [Doc. 29].

The following allegations contained in the Complaints are not disputed by the parties.

Each of the Defendants sought and recieved a non-income verification construction to permanent loan from Plaintiff SunTrust Mortgage, Inc. (SunTrust) for property located in the Hampton Springs Resort, Jackson County, North Carolina.[1] [Doc. 104, at 2; Doc. 146, at 3]. The Defendants executed promissory notes, deeds of trust and Uniform Residential Loan Applications (URLAs). [Doc. 1, at 2; Doc. 1-4; Doc. 17, at 4; Doc. 146, at 3]. The URLA contained a disclosure by each Defendant of his or her income in order to qualify for the loan.[2] [Doc. 1-4, at 2-5; Doc. 17, at 6; Doc. 146, at 3-5]. Each of the Defendants also signed a Borrower's Certification & Authorization, FannieMae Form 1097, which contained a provision that the information provided in the loan application process was true and accurate.[3] [Doc. 1, at 3; Doc. 146, at 6]. Finally, each of them executed a Borrower's Agreement to Future Cooperation pursuant to which each agreed to correct any errors found in loan documents and to re-execute the same if necessary. [Doc. 1-6; Doc.

---

[1]Diversity jurisdiction has been established.

[2]The Defendants claim that SunTrust employee Victor Vidal inserted the financial information but do not deny signing the documents. [Doc. 146, at 5].

[3]Again, the Defendants admit signing the document but claim the information contained therein was provided by SunTrust. [Id.].

17, at 6; Doc. 146, at 7].

Subsequent to making these loans, SunTrust learned that the Defendant's representations of their incomes contained within the loan application documents were inflated. SunTrust asserts that it then requested that the income figures be corroborated, but Defendants claim they were never asked to "correct" their financial information and do not recall being asked for corroboration. [Doc. 146, at 7-8]. They do not dispute, however, that the income figures were never corroborated and that the income representations were incorrect. [Doc. 1, at 3-4; Doc. 17, at 7; Doc. 104, at 7]. SunTrust found the Defendants in default and initiated foreclosure proceedings. [Doc. 104, at 7; Doc. 1, at 4]. On August 4, 2008, the Clerk of Superior Court for Jackson County found that the Defendants were in default and that SunTrust could properly foreclose on the properties. [Doc. 76-1, at 6; Doc. 76-3, at 14]. The Defendants appealed that order to the Jackson County Superior Court and a hearing was held on October 29 and 30, 2008. [Doc. 76-3]. Judge James U. Downs made findings of fact and conclusions of law including the following.

1.    The Defendants executed promissory notes to SunTrust in exchange for their loans and, as security for the notes, they executed and delivered deeds of trust to SunTrust on the properties at issue.

2. The loans were initially construction loans and upon completion of the construction, would become permanent loans.

3. The loans were characterized as non-income verification loans pursuant to which the borrowers, the Defendants, stated their monthly income without verification.

4. Payments during the construction phase were interest only and the Defendants were current on those payments.

5. During quality control procedures, SunTrust learned that the actual income of each Defendant varied greatly from what had been stated on the loan application.

6. SunTrust thereafter began to make individual inquiries of each borrower/Defendant, as provided by the loan documents, in order to verify income.

7. Each Defendant was provided a date by which to provide such verification and each failed to do so.

8. As a result, SunTrust declared each loan in default and accelerated the loans.

9. During the hearing on appeal, the Defendants offered no evidence.

10. Each Defendant therefore owed a valid debt to SunTrust; a legal default had occurred and the entire balance of each note was due in full.

11. SunTrust had a right to foreclose pursuant to a powers of sale in the deeds of trust and had made all reasonable and necessary efforts in serving and notifying each borrower.

12. The foreclosure sales could properly proceed.

[Doc. 76-3, at 33-35].[4] None of the Defendants appealed Judge Downs' decision.

Each of the properties was sold at a foreclosure sale on January 27,[5] 2009, the day after these federal court actions were instituted. [Doc. 46, at 2; Doc. 104, at 7]. The highest bidder for each of the properties was SunTrust which entered credit bids for each parcel. [Doc. 17, at 9; Doc. 46]. None of the Defendants initiated a separate action to enjoin foreclosure based on equitable grounds pursuant to N.C.Gen.Stat. §45-21.34.[6]

SunTrust thereafter supplemented its Complaints in this Court to include the deficiency amounts in the breach of contract claim. [Id.]. SunTrust also stated a claim for fraud based on the allegedly false representations of

---

[4] There was a separate order in each separate foreclosure proceeding.

[5] The Affidavit of Cary Mudge erroneously states that the sales took place on *June* 27, 2009, but all parties agree that the sales were conducted in January 27, 2009. [Doc. 76-2 at 7].

[6] That statute provides in pertinent part: "Any owner of real estate ... may apply to a judge of the superior court, prior to the time that the rights of the parties to the sale ... becoming fixed pursuant to G.S. 45-21.29A to enjoin such sale, upon ... any ... equitable ground which the court may deem sufficient." The owner has a ten day period following the foreclosure to initiate the separate action. Id.

monthly income contained in the URLAs. [Id.].

The Defendants filed counterclaims against SunTrust in which they claimed that SunTrust employees inserted inaccurate monthly income figures sufficient to guarantee that the loans would be approved. [Doc. 17]. The Defendants, however, admitted that they signed the documents and ultimately received the loans from SunTrust. [Id.; at 6-9]. The Defendants also admitted that after receiving the loans, SunTrust requested verification of their incomes which they did not provide. [Id., at 8]. The Defendants asserted counterclaims for fraud, negligent misrepresentation, unfair and deceptive trade practices, breach of the duty of good faith and fair dealing and negligent appraisal. [Id., at 11-19].

SunTrust moved to dismiss these counterclaims. [Doc. 19; Doc. 30]. On July 14, 2009, Magistrate Judge Dennis L. Howell recommended that each of the counterclaims be dismissed. [Doc. 40]. The Magistrate Judge also addressed the counterclaims of two defendants, the Baker Defendants, who are no longer part of the action. [Id., at 31]. Noting that those defendants had alleged counterclaims for fraudulent inducement in the loan application process, the Magistrate Judge held:

> Specifically, these defendants allege that plaintiff was involved in forgery of the loan and closing documents, misrepresentation concerning the nature of the loan, unilaterally overstating defendants' income, and misrepresenting that they would not be

required to verify their stated income. ... These defendants' claims that their signatures on the loan documents were forged is barred as they failed to raise such issue in the foreclosure proceedings. In the underlying foreclosure proceeding, Honorable James U. Downs, North Carolina Superior Court Judge, entered an order allowing the foreclosure of the deed of trust, and a foreclosure sale was conducted on January 27, 2009, which became final on or about February 6, 2009, when the upset bid period ended. The ... defendants neither appealed the foreclosure order nor filed an independent civil action to enjoin the foreclosure on equitable grounds. ... The claims of forgery concern documents the authenticity of which was, necessarily, relied upon by Judge Downs in issuing his foreclosure order. These defendants' failure to raise such alleged forgery before the Superior Court in such earlier action prevents assertion of such claims in this action.

[Id., at 32-35].

The Magistrate Judge recommended that the counterclaims be dismissed on the basis of *res judicata*. [Id.]. On August 25, 2009, this Court[7] rejected the objections to the Memorandum and Recommendation and granted the motion to dismiss the Defendants' counterclaims. [Doc. 50].

After a period of discovery, SunTrust brought the pending motion for partial summary judgment as to the breach of contract cause of action. In response to the motion, the Defendants claim that employees of Suntrust induced the Defendants to enter into the loans at issue by misrepresentations. [Doc. 104, at 2-7]. They also claim that SunTrust violated its own underwriting

---

[7] The Order was entered by the Honorable Lacy H. Thorburg of this Court. When Judge Thornburg retired, the case was reassigned to the undersigned.

guidelines and that such violations preclude its ability to "invalidate" the loans. [Id., at 11-15]. Thus, they argue, SunTrust is estopped from enforcing the promissory notes and have waived the provisions of the loan agreements requiring the Defendants to verify their income after the closing. [Id., at 15-17]. The Defendants also contend that whether the misrepresentations of income were material breaches of the contracts is a question for the jury. [Id., at 18-19]. These arguments relate to the affirmative defenses of estoppel, waiver, unclean hands and bad faith asserted by the Defendants in their amended answer after the dismissal of their counterclaims. [Doc. 48]. Finally, the Defendants claim that they are entitled to an offset and that SunTrust failed to properly mitigate its damages. [Doc. 104, at 18-19].

## STANDARD OF REVIEW

> Under the Federal Rules of Civil Procedure, summary judgment shall be awarded "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, ... show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has observed, "this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."

Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 519 (4th Cir. 2003), *certiorari denied* 541 U.S. 1042, 124 S.Ct. 2171, 158 L.Ed.2d 732 (2004) (emphasis in original).

A genuine issue of fact exists if a reasonable jury considering the evidence could return a verdict for the nonmoving party.  Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994), *certiorari denied* 513 U.S. 814, 115 S.Ct. 68, 130 L.Ed.2d 24 (1994), *citing* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).  "Regardless of whether he may ultimately be responsible for proof and persuasion, the party seeking summary judgment bears an initial burden of demonstrating the absence of a genuine issue of material fact."  Bouchat, 346 F.3d at 522, *citing* Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).  If this showing is made, the burden then shifts to the non-moving party who must convince the Court that a triable issue does exist.  Id.

A party opposing a properly supported motion for summary judgment

> "may not rest upon the mere allegations or denial of [his] pleadings," but rather must "set forth specific facts showing that there is a genuine issue for trial."  Furthermore, neither "[u]nsupported speculation," nor evidence that is "merely colorable" or "not significantly probative," will suffice to defeat a motion for summary judgment; rather, if the adverse party fails to bring forth facts showing that "reasonable minds could differ" on a material point, then, regardless of "[a]ny proof or evidentiary requirements imposed by the substantive law," "summary judgment, if appropriate, shall be entered."

Id.

Nonetheless, in considering the facts for the purposes of a summary judgment motion, the Court will view the pleadings and material presented in

the light most favorable to the nonmoving party.  <u>Matsushita Electric Industrial</u>

<u>Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538

(1986).

## DISCUSSION

### Summary Judgment on Contract Liability.

Plaintiff has moved for summary judgment on the issue of the

Defendants' liability on their promissory notes.[8]  Plaintiff argues that the issues

of whether there exists a valid debt and whether there has been a default as

to each note has been adjudicated in the foreclosure proceeding.  Plaintiff,

therefore, asserts that the doctrine of res judicata entitles it to judgment as a

matter of law on the issue of liability.

Defendants argue that the doctrine of res judicata does not apply

because they did not have an opportunity in the foreclosure action to litigate

their defenses to the promissory notes.

"Under res judicata, a final judgment on the merits of an action

precludes the parties or their privies from relitigating issues that were or could

have been raised in that action." <u>Allen v. McCurry</u>, 449 U.S. 90, 94, 101 S.Ct.

411, 66 L.Ed. 2d 308 (1980).  "Federal courts must give preclusive effect to

---

[8] There is no motion for summary judgment as to Plaintiff's claim for fraud, which
remains for trial.

state court judgments 'whenever the courts of the state from which the judgments emerged would do so.'" <u>Merrill Lynch Business Financial Services, Inc. v. Cobb</u>, 2008 WL 6155804, 2008 U.S. Dist. LEXIS 109010, *8-9 (E.D.N.C. 2008), quoting <u>Allen</u>, 449 U.S. at 94.  Under North Carolina law the doctrine applies to bar relitigation of "every point which properly belonged to the subject litigation and which the parties, exercising reasonable diligence, might have brought forward." <u>Painter v. Ballenger</u>, 288 N.C. 165, 172, 217 S.E.2d 650, 655 (1973).  It also serves to bar the assertion of defenses, as well as claims or counterclaims, that were or could have been litigated in the earlier proceeding.  See, <u>Guiness PLC v. Ward</u>, 955 F.2d 875, 895-97 (4th Cir. 1992).

In the foreclosure proceeding the Superior Court specifically held that as to each Defendant the obligation manifested by the promissory note "is a valid debt of which SunTrust, as holder, is seeking foreclosure. . . . There is a default of a legal obligation arising under the Note, . . . hence, the entire balance of the Note is due and payable in full." [see, e.g., Doc. 76-3 at 34]. Defendants argue that this is not a final determination as to the issues of valid debt and default because they did not have the opportunity to present any equitable defenses in the foreclosure proceeding.  They assert the defenses

of waiver and estoppel.[9]  They claim that by failing to obtain verification of the borrowers' income prior to closing as required by its own underwriting guidelines that SunTrust waived the right to enforce the Borrower's Agreement to Future Cooperation.  Since the only default found by the Superior Court was that the Defendant failed to respond when SunTrust demanded verification of income, this defense if viable and if proved would negate default.[10]  Defendants also claim that by making these loans in violation of its own underwriting guidelines SunTrust has waived its right to enforce the promissory notes.

A determination of whether these defenses could have been raised in the foreclosure proceeding requires an examination of North Carolina's foreclosure statute.  It calls for an abbreviated hearing before the Clerk of Superior Court limited to the four basic issues of whether there is 1) a valid debt, 2) default, 3) right to foreclose on the property and 4) whether notice has been afforded to all parties entitled thereto. N.C. Gen. Stat. §45-21.16(d).  An order of the Clerk can be appealed to the Superior Court.  N.C. Gen. Stat.

---

[9] Defendants assert that they present defenses of "waiver, estoppel, bad faith and unclean hands," [Doc. 104 at 8], but in their arguments they only present waiver and estoppel.  The disposition herein, however, applies equally to other equitable defenses.

[10] Defendants assert that they were all current on the required payments on the promissory notes at the time of the foreclosure. [Doc.76-3 at 13, 23, 34, 44, 54, 64, 75, 84, 95, 106, 117, 128, and Doc. 104 at 7]

§45-21.16(d1).  Because of the very limited nature of the hearing before the Clerk, if a debtor seeks to raise any equitable defenses, such can only be raised in a separate hearing before the Superior Court Judge pursuant to an application seeking to enjoin the sale of the property.  Such application must be filed, however, before the expiration of the upset bid period for the foreclosure sale, N.C. Gen. Stat. §45-21.34,  because once that period expires the "rights to the parties to the sale or resale become fixed." N.C. Gen. Stat. §45-21.29A.

Waiver and estoppel are equitable defenses Defendants could not have raised in the Clerk's hearing, or on the appeal therefrom to Superior Court. Meehan v. Cable, 127 N.C. App. 336, 340, 489 S.E.2d 440, 443-44 (1997); Mosler _ex rel_. Simon v. Druid Hills Land Co., Inc., 681 S.E.2d 456, 458 (2009) ("On a _de novo_ appeal to the Superior Court in a section 45-21.16 foreclosure proceeding, the trial court must declin[e] to address [any party's] argument for equitable relief[.]") (citations omitted).   In re Foreclosure under that Deed of Trust Executed by Azalea Garden Bd., 140 N.C.App. 45, 58, 535 S.E.3d 388 (2000)(consideration of evidence of creditor's waiver in §45-21.16 hearing was error).  See also, Studio Frames v. Std Fire Ins. Co., 369 F.3d 376 (4th Cir. 2004) (referring to the "_equitable_ concepts of waiver and estoppel" (emphasis in original)).  Therefore Defendants argue the Superior Court Order

on the foreclosure is not a final determination that there was a valid debt and a default. For that reason they argue that the foreclosure order has no preclusive effect.

Plaintiff argues that since the Defendants failed to file an application pursuant to N.C. Gen. Stat. §45-21.34 raising these equitable defenses, that the rights of the parties to the foreclosure (including the Plaintiff and Defendants) "became fixed" when the upset bid period expired. N.C. Gen. Stat. §45-21.29A. Thus, at that time the determination of the Superior Court became a final adjudication of the issues of valid debt and default and precludes the raising of those equitable defenses in this action.

The North Carolina courts have not had an opportunity to address this issue. The United States District Courts for both the Eastern and Middle Districts of North Carolina, however, have.

> [A] party may raise equitable defenses in a separate action to enjoin the foreclosure sale [pursuant to N.C.G.S. §45-21.34]. ... The rights of the trustee of the Notes (as seller) become fixed at the expiration of a ten-day period for the filing of upset bids. At that point, the debtor loses its rights to the equity of redemption. Here, ... defendants failed to file a separate action in superior court to enjoin the foreclosure sales on equitable grounds. ... The rights of the parties to the sale are fixed and ... in sum, defendants ... are precluded from challenging the validity of the debts owed under the ... Notes.

Merrill Lynch Business Financial Services, Inc. v. Cobb, 2008 WL 6155804 (E.D.N.C. 2008). "[T]o the extent that [the Defendants] failed to raise any

issues in the state court proceeding that [they] attempt[ ] to raise in this lawsuit, a North Carolina state court would find that [they] waived the right to raise those issues." Brumby v. Deutsche Bank Nat. Trust Co., 2010 WL 617368 **6 (M.D.N.C. 2010), *report and recommendation adopted* 2010 WL 3219353 (M.D.N.C. 2010). "Here, [the Defendants] ... did [not] seek an injunction pursuant to N.C.Gen.Stat. §45-21.34. [They] therefore waived [their] rights in the state courts to contest the issues." Id. Because North Carolina courts would give "preclusive effect to the judicial findings in the state foreclosure proceeding, [the Defendants] may not use this forum to achieve the results [they] could not obtain in state court." Id.

The Court finds the reasoning of the Eastern and Middle Districts to be persuasive. If the Defendants were allowed to litigate anew the issues of whether there was a debt and whether there was a default, then the rights of the parties were far from "fixed" at the end of the upset bid period, as dictated by N.C. Gen. Stat. 45-21.29A. The Defendants' argument stands that statute on its head. If a debtor can come into court after the completion of a foreclosure sale and then prove that there was no debt and there was not default, and thus there was no right to foreclose, then does the purchaser at the foreclosure sale have title? The Defendants do not address this problem with their argument.

This conclusion is also consistent with the doctrine of res judicata. It not only gives preclusive effect to issues actually litigated to a conclusion but also "every point which properly belonged to the subject litigation and which the parties, exercising reasonable diligence, might have brought forward." Painter, 288 N.C. at 172, 217 S.E.2d at 655. City of Asheville v. State, 192 N.C.App. 1, 14-15, 665 S.E.2d 103 (2008), *appeal dismissed* 672 S.E.2d 685 (2009) ("The bar of the judgment in [the prior action] extends not only to matters actually determined, but also to other matters which in the exercise of due diligence could have been presented for determination in the prior action.") (citations omitted); Fickley v. Greystone Enters., Inc., 140 N.C.App. 258, 260, 536 S.E.2d 331, 333 (2000) ("the judgment in the former action ... is conclusive in the latter not only as to all matters actually litigated and determined, but also as to all matters which could properly have been litigated and determined[.]").

The Defendants' seek to distinguish the present case from Merrill Lynch and Brumby by arguing that the present deficiency action was brought by SunTrust before the expiration of the upset bid period. [Doc. 104 at 10-11]. It is undisputed, however, that the Defendants did not assert their equitable defenses, in this action or anywhere else, before the upset bid period expired. The Defendants' position that there were equitable defenses which would

negate a finding of debt and default was never raised before the critical moment when the rights of the parties became fixed pursuant to N.C. Gen. Stat. §45-21.29A. At that moment the preliminary determination of the Superior Court that there was a valid debt and a default became a final determination between the parties as to those issues entitled to preclusive effect.

The Defendants also claim that there is a question of fact for the jury as to whether the borrower's income is a material term of the loan application process. Materiality, however, would be a legal determination. This does not raise an equitable defense. Thus the Superior Court's order concerning the issue of valid debt and default has foreclosed this argument. Even if this were an equitable defense, however, this argument would be precluded for the reasons set forth above.

**Summary Judgment as to Defendants' Claim for Set Off**

Plaintiff also moves for summary judgment on the issue of the right of set off asserted by the Defendants pursuant to N.C. Gen. Stat. §45-21.36. That statute provides in pertinent part as follows

> When any sale of real estate has been made by a mortgagee ... at which the mortgagee ... becomes the purchaser and takes title ... and thereafter such mortgagee ... shall sue for and undertake to recover a deficiency judgment against the mortgagor ..., it shall be competent and lawful for the defendant against whom such deficiency judgment is sought to allege and show as matter of

defense and offset, ... that the property sold was fairly worth the amount of the debt secured by it at the time and place of sale or that the amount bid was substantially less than its true value, and, upon showing, to defeat or offset any deficiency judgment against him[.]

N.C.G.S. §45-21.36.

This statute "allows a debtor to claim a setoff against a deficiency judgment to the extent that the bid at the foreclosure is substantially less than the true value of the realty, where (1) the creditor forecloses pursuant to a power of sale clause; (2) there is a deficiency, and; (3) the creditor who forecloses is the party seeking a deficiency judgment." United Carolina Bank v. Tucker, 99 N.C.App. 95, 98, 392 S.E.2d 410 (1990).

In opposition to the motion for summary judgment seeking to dismiss this defense of offset, the Defendants offered only the testimony of Bobby McMahan, the Jackson County property tax assessor. [Doc. 109-1]. McMahan testified that his office "determine[s] the value of real property located in Jackson County." [Id., at 6]. His office is directed by North Carolina statutes to bring the tax assessments of real property up to the market value. [Id.]. He defined market value as the price that a willing buyer and a willing seller would agree on under normal and reasonable circumstances. [Id.]. In determining the market value of property, his office uses a sales comparison approach. [Id., at 6-7]. The purpose of determining the market value of a

piece of property is to assess taxes on it.  [Id., at 8].  In order to assess the

value of a parcel of property as of January 27, 2009, the date of the

foreclosure sales, he would consult the property revaluation of January 1,

2008.[11] [Id., at 14].  The assessed value "should be . . . equivalent to the

appraised value" of the property.  [Id., at 45].

McMahan also testified that he is familiar with the Hampton Springs

development which is the subject of this litigation.  [Id., at 18].  In fact, the

County's valuation of the property within that development is available to the

public via the County's website.  [Id., at 19].  McMahan testified to the

assessed tax value as shown on the tax records of the county, pertaining to

each parcel of property at issue in this litigation.[12] Those assessments exceed

the amount bid by Suntrust with the exception of three parcels. [Doc. 104-10].

Suntrust claims that in opposing a deficiency judgment, the debtor may

not rely on assessments made for purposes of taxing real estate.  It has long

been the law in North Carolina that tax assessments are not competent to

prove value.  Star Mfg. Co. v. Atlantic Coast Line R. Co., 222 N.C. 330, 332-

33, 23 S.E.2d 32 (1942); Bunn v. Harris, 216 N.C. 366, 374, 5 S.E.2d 149

---

[11] Jackson County re-assesses the properties for tax purposes every four years. [Doc. 109-1 at15].

[12] In its brief, Suntrust cited other portions of McMahan's deposition testimony but failed to include those portions of the transcript among the forecasts of evidence filed with the Court.

(1939). See also, United States v. Certain Parcels of Land in Arlington County, 261 F.2d 287, 290 (4th Cir. 1958). This is in accord with the overwhelming weight of authority throughout the country. Valuation for Taxation Purposes as Admissible to Show Value for Other Purposes, 39 A.L.R. 209, 214 (2008).

Defendants argue that this rule is based on the idea that the records showing the tax assessment is not admissible because the person formulating the appraisal of value is not present in court to be cross examined, see, Arlington County, 261 F.2d at 290, and thus the rule is inapplicable here because Tax Assessor McMahan has testified and was available for cross-examination.

Even though it is true that McMahan was sworn, testified and was subject to cross-examination, the Defendants never qualified him as an expert witness. His background is as a land records custodian. [Doc. 109-1 at 5]. His only qualification for being Tax Assessor is having completed four classes, [Id. at 4-5], but nowhere did he testify as to the content of those classes, or even whether they had anything to do with the appraisal of real property as opposed to the administrative duties of his office. McMahan never testified that he had any participation in the evaluation of the properties in question, only stating that "his office" had made the assessments. [See, e.g., Id. at 6, 26-28, 29-31]. Most importantly, McMahan never testified that the assessments represented

his learned opinion as to the values of the properties at the date of sale. At bottom, McMahan's testimony was merely an elaborate authentication of the public records reflecting the county's assessments of the properties. The authenticity of those records, however, was never in question. See Fed. Rules of Evid, Rule 902(2). The tax assessment documents are not admissible to prove value, and McMahan provided nothing beyond those documents to prove such value.

Defendants having offered no forecast of evidence to support a claim for set off under N.C. Gen. Stat. §45-21.36, Plaintiff is entitled to summary judgment on that claim.

## Defense of "Failure to Mitigate"

Defendants also present a very brief argument that there remains a genuine issue of material fact as to the amounts the Defendants owe on the notes because there is a question as to what portion of Plaintiff's damages were caused by the Defendants' default and what part was caused by Plaintiff's own conduct. Defendants cite absolutely no authority for such a novel calculation of damages stemming from a default on a promissory note. It is established that the Defendants defaulted. It is uncontroverted that based on those defaults Plaintiff accelerated the debts pursuant to paragraph 17(e) of each Construction Loan Agreement. Defendants then had the obligation to

pay the full amount of each of their notes, plus accrued interest and costs. When full payment was not made, foreclosure ensued, yielding a portion of the full amount of each debt. The remaining balances, as calculated by Plaintiff's officer Cary Mudge [Doc. 76-2] are uncontroverted. If the Defendants seek to contest the amount owed on the notes it is incumbent upon the Defendants to present a forecast of evidence that puts the amounts at issue. Defendants have failed to do so.

As to Defendant Boutros, an argument is raised that Plaintiff failed to mitigate its damages by rejecting an offer by the father of Defendant Boutros to pay the full indebtedness. Plaintiff denies that such an offer was made. Defendant Boutros has presented a forecast of evidence of what offer was made, but from this forecast it is unclear whether the offer would be admissible under Rule 408 of the Rules of Evidence. Such foundation for admissibility would arguably be a necessary element of the forecast of evidence in order to avoid summary judgment. Out of an abundance of caution the Court will conditionally receive the evidence for the purposes of this motion and thus deny summary judgment as to the amount of the judgment against Defendant Boutros. If Plaintiff is challenging the admissibility of such evidence, the Court will entertain a motion in limine if filed sufficiently in advance so that it may be heard before the commencement of trial.

For these reasons, SunTrust is entitled to judgment as a matter of law on the issue of the amount of the debts owed by the Defendants on their respective promissory notes, with the exception of Defendant Boutros.

## ORDER

**IT IS, THEREFORE, ORDERED** that the Plaintiff's Consolidated Motion for Partial Summary Judgment [Doc. 76] is hereby **GRANTED** except as to the defense of failure to mitigate in connection with Defendant Boutros, and as to that portion of the motion it is **DENIED**.

Signed: October 5, 2010

Martin Reidinger
United States District Judge